**Russell S. TAYLOR, Appellant,**

v.

**IOWA DEPARTMENT OF JOB SERVICE and Hurst Excavating, Inc., Appellees.**

No. 84–480.

Supreme Court of Iowa.

Feb. 13, 1985.

Mark K. Hill, of Legal Services Corp. of Iowa, Iowa City, for appellant.

Joseph L. Bervid, Walter F. Maley and Blair H. Dewey, Des Moines, for appellee Iowa Dept. of Job Service.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, CARTER, and WOLLE, JJ.

WOLLE, Justice.

A worker's eligibility for unemployment benefits depends largely upon the reasons the employee has left the employment. Claimant Russell S. Taylor (Taylor) gave the Iowa Department of Job Service (department) several reasons for quitting a job after working only a few days. The department found that Taylor had left the job only because of illness and denied his claim on the ground that he had not been advised by a physician to leave the job. The district court affirmed. We reverse and remand, concluding that the department should not decide whether or not Taylor is disqualified from receiving unemployment benefits until it has considered each of the several reasons he gave for quitting the job.

Taylor's version of what happened was the only evidence presented to the agency. Taylor had previously been employed as an asbestos worker, performing relatively light and skilled construction work. He had been unemployed for approximately four months and was receiving unemployment benefits at the time he applied for the job in question. He had tried without success to find suitable work in the area of his training and experience.

On May 20, 1982, Taylor accepted employment with the employer Hurst Excavating, Inc. (Hurst), running a jackhammer in a 48 inch underground tunnel where a sewer pipe was being installed. When Taylor accepted that position as a jackhammer operator, he recognized that the job would be difficult to handle for a person of his size and physical condition but he decided to accept the work on a trial basis. Taylor and Hurst agreed that Taylor would be allowed to work fifty hours per week and would receive an hourly wage of $6.00 for the first eight hours each day, and $9.00 for overtime hours.

During the six days that Taylor worked at the jackhammer job he found the working conditions extremely difficult and the pay less than he had been promised. He said the manual labor was heavier, noisier, and more exhausting than he had expected, producing headaches and nausea. He said he had received electrical shocks from a cord lying in the water-filled trench where he was working. Finally, he said his hours of work had been reduced from the fifty he had been promised to forty per week, netting him ten hours less overtime and $90 less pay each week. In explaining why he quit midway through his seventh day on the job, Taylor gave three reasons: illness, unsafe and detrimental working conditions, and a substantial change in his contract for hire.

The department twice considered and rejected Taylor's claim for benefits. The second hearing was made necessary by an interim judicial review decision of the John-

son County District Court finding that the department had not considered the whole record before issuing its first ruling. The department in an appeal decision, and the district court on judicial review, both upheld the findings of fact and conclusions of law which the hearing officer entered in denying Taylor's claim for benefits.

### I. *Scope of Judicial Review.*

 Our review of this contested case agency decision is at law, not de novo, and we are limited to the record made before the agency. *Green v. Iowa Department of Job Service,* 299 N.W.2d 651, 655 (Iowa 1980). To decide the issues here raised, we must determine whether the agency action was either affected by an error of law or "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code §§ 17A.19(8)(e), (f) (1981). *See Higgins v. Iowa Department of Job Service,* 350 N.W.2d 187, 190 (Iowa 1984). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the department's finding from being supported by substantial evidence. *Messina v. Iowa Department of Job Service,* 341 N.W.2d 52, 59 (Iowa 1983). At the same time, findings of fact and a reasoned decision by the agency are required by Iowa Code section 17A.16 and are essential for purposes of judicial review. *Johnston v. Iowa Real Estate Commission,* 344 N.W.2d 236, 239 (Iowa 1984). Because the court on judicial review of agency action has no original authority to make findings of fact and declare the parties' rights, the court should remand for further specific findings when the agency's ruling does not clearly disclose a sound factual and legal basis for its decision. *See, e.g., Brown v. Public Employment Relations Board,* 345 N.W.2d 88, 93–94 (Iowa 1984); *Public Employment Relations Board v. Stohr,* 279 N.W.2d 286, 290–92 (Iowa 1979).

The ultimate question which must be answered in this case is whether Taylor is disqualified from receiving benefits because he left his jackhammer job "voluntarily without good cause attributable to his or her employer," the general language of Iowa Code section 96.5(1) (1981). That statute furthers the declared Iowa public policy of using unemployment compensation to protect workers from "involuntary unemployment," the "greatest hazard of our economic life." Iowa Code § 96.2 ("Declaration of State Public Policy" and "guide for interpretation"); *see Community Lutheran School v. Iowa Department of Job Service,* 326 N.W.2d 286, 289 (Iowa 1982).

The larger issue here is whether chapter 96 should be construed to give special protection to persons like Taylor who were drawing unemployment benefits prior to accepting inappropriate employment. Taylor claims the department committed an error of law in not recognizing and applying such an exception.

The narrower issues here concern each of the three reasons Taylor gave for leaving his job. We must decide whether the department gave full and fair consideration to each of the reasons he gave for quitting before determining that he was disqualified from receiving benefits.

### II. *Should Persons Drawing Benefits Be Allowed A Trial Period On Unsuitable Jobs?*

Taylor first asserts as a matter of important public policy that the department should not penalize persons drawing unemployment benefits who try out work which may prove to be unsuitable. He points out that he had a work history of relatively light and unskilled construction work, had been receiving unemployment benefits for four months, and could have continued to receive benefits without applying for this lower paying and unskilled job. *See New Homestead v. Iowa Department of Job Service,* 322 N.W.2d 269, 271 (Iowa 1982) (claimant allowed reasonable time to seek work commensurate with customary occupation). Taylor chose to accept employment as a jackhammer operator even though Hurst agreed the work might prove too strenuous for him. Taylor's counsel now vigorously argues that it would be unfair for the department to deprive him of

benefits just because he went the extra mile in searching for gainful employment. His brief states:

> [A]lthough a claimant's intention to rejoin the nation's work force is normally inferred from the manner in which he left his job and his subsequent attempts to find work, Mr. Taylor's intention to remain in the work force is eloquently witnessed by his acceptance of the unsuitable job in the first place. If a man has ever demonstrated the free market virtues of hard work and ambition it was Mr. Taylor. He is precisely the worker the act was designed to protect from the ravages of unemployment.

Taylor concedes that Iowa Code chapter 96 does not authorize an award of benefits to individuals who accept work on a trial basis and subsequently quit, but he urges us to follow the lead of other states that permit awards under such circumstances. *See, e.g., Laya v. Cebar Construction Co.,* 101 Mich.App. 26, 300 N.W.2d 439 (1981); *Wojcik v. Division of Employment Security,* 58 N.J. 341, 277 A.2d 529 (1971); *Wallace v. Department of Employment Security,* 134 Vt. 513, 365 A.2d 517 (1976).

■ We decline to carve the proposed judicial exception out of the existing statutory unemployment compensation scheme. Iowa Code chapter 96 does not authorize payment of benefits to individuals who have quit without good cause attributable to the employer, even where the claimant has given up unemployment benefits for unsuitable employment before quitting that employment. Under our statute it simply makes no difference that the person who has quit a job was drawing unemployment benefits when the person applied for and accepted a job of questionable suitability. If public policy demands special consideration for persons already drawing unemployment benefits who try out potentially unsuitable jobs and fail, the legislature may amend the statute in that regard.

### III. *Taylor's Reasons for Quitting.*

The pertinent statute and department regulations provide guidelines for evaluating each of the three reasons Taylor gave for quitting his job. We must decide whether substantial evidence in the record as a whole supports the department's determination that Taylor did not quit for a reason that would permit him to receive benefits.

■ A. Illness. Taylor said that he quit the job because of illness, but at no time did he consult a physician. When an employee's only reason for quitting a job is illness, injury or pregnancy, the statute and implementing regulations clearly require the employee to obtain a physician's recommendation to quit in order to avoid disqualification. Iowa Code section 96.-5(1)(d) declares in pertinent part:

> An individual shall be disqualified for benefits:
> 1. Voluntary quitting. If he or she has left his or her work voluntarily without good cause attributable to his or her employer, if so found by the department. But he or she shall not be disqualified if the department finds that:
>
> . . . . .
>
> d. *The individual left employment because of illness, injury or pregnancy upon the advice of a licensed and practicing physician,* and upon knowledge of the necessity for absence immediately notified the employer, or the employer consented to the absence, and after recovering from the illness, injury or pregnancy, when recovery was certified by a licensed and practicing physician, the individual returned to the employer and offered to perform services and the individual's regular work or comparable suitable work was not available, if so found by the department, provided the individual is otherwise eligible.

(Emphasis added). The regulations are equally explicit, providing that one reason "presumed to be without good cause attributable to the employer" is leaving due to illness "but not on the advice of a licensed and practicing physician." 370 Iowa Admin.Code 4.25(39); *see also* 370 Iowa Admin.Code 4.26(6). As the department

points out, this requirement reduces the possibility that persons would be allowed to draw unemployment benefits on the basis of a self-diagnosis of illness that is either inaccurate or fraudulent.

Taylor never consulted a physician even though he said one reason he quit was the illness he contracted on the job. Before analyzing the other reasons Taylor gave for quitting, we note that the department correctly applied the applicable law governing illness as a sole reason for quitting. Had Taylor given no other reason for quitting, his failure to consult a physician would clearly have barred his claim because of the quoted statute and regulations.

B. Unsafe and detrimental working conditions. Taylor contends he also quit because the working conditions were unsafe and detrimental to his welfare. He argues that the work was beyond his physical capability, and he complains that the noise and electrical shocks he received while working in the wet underground tunnel were intolerable.

Neither the hearing officer's ruling nor the department's final decision addressed this second reason that Taylor gave for quitting. Apparently the department determined that Taylor's entitlement to benefits must stand or fall on the illness reason he had given. Twice in its decision the department emphasized Taylor's reliance on the illness reason:

> The claimant's fact-finding statement is replete with statements that he left his employment because of his illness.
> . . . .
> At the claimant's own admission he left his employment because of illness.

Regardless whether Taylor emphasized illness more than his other reasons for quitting, we are satisfied that he adequately informed the department that illness was not his only reason. He was therefore entitled to have the department consider each of the reasons he reported in making his claim for benefits. In his initial filed claim for benefits, Taylor wrote that he had found the work "physically difficult to do." He said he "was shocked several times." He concluded by writing:

> After I started getting sick at work I just could not handle it. I had worked in noisy places but not standing in a foot of water running a jackhammer.

Department regulations do furnish rough guidelines which recognize that Taylor's second reason for quitting may constitute good cause attributable to the employer rather than a cause which would disqualify him. The regulations provide in pertinent part:

> The following are reasons for a claimant leaving employment with good cause attributable to the employer:
> . . . .
> The claimant left due to unsafe working conditions.
> . . . .
> The claimant left due to intolerable or detrimental working conditions.

370 Iowa Admin.Code 4.26(2), (4). On remand the agency shall make findings of fact and a reasoned decision on whether Taylor's second reason constituted good cause attributable to the employer, or whether Taylor must be disqualified regardless of those working conditions about which he has complained and given testimony.

C. Change in employment agreement. The final reason Taylor gave for quitting the jackhammer job was that shortly after he was employed the employer Hurst switched from one shift to two shifts, reduced his weekly hours from 50 to 40, and thereby substantially changed the contract of hire. As with his complaint about working conditions, it is clear Taylor urged this reason from the time he first submitted his claim for benefits. The hearing examiner and department, however, found instead that Taylor's only reason for quitting was the illness he had contracted. In its decision, the department found Taylor's illness reason incompatible with his complaint about the change of compensation. As a consequence, the department did not independently determine whether there was

substantial evidence in the record to support the latter reason for quitting. The decision explains:

> As stated by the claimant, he left his employment after becoming ill, and, therefore, it is inconsistent for him to complain about not working ten hours per day as originally told. While the claimant was not working ten hours per day as originally told, this would not be a legitimate complaint by the claimant because, due to his illness, he did not even want to work the eight hours per day that were available to him.
>
> . . . .
>
> Under the facts of this case, the claimant did not leave his employment because of the change in his contract of hire, but left because of illness.

■■■ Taylor contends that the reasons he gave for quitting the job are not necessarily mutually exclusive, and we agree. An employee may choose to leave employment for several reasons, with each reason important in the decision to quit. Perhaps Taylor's illness would not have caused him to quit if working conditions had been tolerable or the hours of work and compensation equivalent to those he had been promised.

■■■ Nothing in the department's regulations suggests that a claimant must rest his entire claim for unemployment compensation on one reason for leaving a job. The regulations do provide guidelines for determining when a change in a contract of hire constitutes good cause attributable to the employer:

> An employer's willful breach of contract of hire shall not be a disqualifiable issue. This would include any change that would jeopardize the worker's safety, health or morals. The change of contract of hire must be substantial in nature and could involve changes in working hours, shifts, remuneration, location of employment, drastic modification and type of work, etc. Minor changes in a worker's routine on a job would not constitute a change of contract of hire.

370 Iowa Admin.Code 4.26(1). As with the contention that Taylor quit because of intolerable working conditions, we cannot decide as a matter of law whether Taylor quit because of the change in his employment contract. There is sufficient evidence that Taylor was promised and thereafter denied overtime hours and pay. The agency on remand should make findings of fact and a reasoned decision on whether there was a substantial change in Taylor's contract of hire, whether that was a reason he quit, and whether that constituted good cause attributable to the employer within the meaning of the controlling statute and regulations.

■■■ In considering again the reasons Taylor gave for quitting, the department may receive some guidance from *Ellis v. Iowa Department of Job Service*, 285 N.W.2d 153 (Iowa 1979), a case on which Taylor places considerable reliance. In *Ellis*, a housekeeper informed her employer at the outset of the employment that she was allergic to evergreen trees. On the first Christmas after she was hired, the employer did not set up a Christmas tree. On the second Christmas, however, the employer insisted on having a Christmas tree; the housekeeper asserted that she could not work because of her allergic condition and quit. *Id.* at 154. Although the department denied unemployment benefits to the housekeeper on the ground that she had left without good cause attributable to her employer, we affirmed the district court's decision which overturned that agency ruling. One teaching of the *Ellis* case is that even though an employee's allergy is not itself a condition attributable to the employer, it may in combination with other factors constitute good cause for quitting attributable to the employer. A combination of reasons allowed Ellis to receive benefits: she was allergic; the employer understood the presence of a tree would cause her difficulty; the employer nevertheless created a condition detrimental to her because of the allergy; and the resulting working conditions were not reasonably tolerable for her. *Id.* at 157. Similarly here the department must consider all rea-

sons which may have combined to give Taylor good cause to quit, then consider whether any of those reasons was a cause attributable to the employer Hurst.

### III. *Burden of Proof.*

The final issue addressed by the parties in this appeal is whether the claimant Taylor or the employer Hurst had the burden of proof on the question whether Taylor's quit was voluntary without good cause attributable to the employer.

It is not clear from the decision of the hearing officer and department whether the burden of proof was placed on Taylor or Hurst. The initial decision of the hearing officer, however, suggests that the hearing officer did place the burden on Taylor, for it provided:

> Pursuant to section 96.5(1) of the Iowa Code, the claimant is disqualified from receiving job insurance benefits as his voluntary separation from employment was without good cause attributable to the employer. The burden is on the claimant to establish his entitlement to job insurance benefits. *See Spence v. Iowa Employment Security Commission,* 249 Iowa 154, 159, 86 N.W.2d 154, 156–57 (1957). Under the facts of this case, the claimant has failed to meet his duty.

█ On remand, the agency shall place upon the employer the burden of proving that Taylor quit without good cause attributable to the employer and therefore is disqualified for benefits. The Iowa legislature recently amended Iowa Code chapter 96 to place the burden of proof on the employer in voluntary quit cases. That amendment provided:

> The claimant has the burden of proving that the claimant meets the basic eligibility conditions of section 96.4. The employer has the burden of proving that the claimant is disqualified for benefits pursuant to section 96.5.

1983 Iowa Acts ch. 190, § 11 (West 1983). Section 27(2) of that act provides that the amendment is to "apply to all new or pending benefits claims." As a consequence

the usual presumption that statutes are prospective only in their operation does not apply to the burden-of-proof amendment. *See Cook v. Iowa Department of Job Service,* 299 N.W.2d 698 at 703 (Iowa 1980). Taylor's claim was pending before the agency on the effective date of the amendment.

It is unfortunate that this case must once again be remanded for specific additional findings and a reasoned decision by the agency. We are satisfied, however, that the hearing officer and the department have not yet fairly and adequately considered all of the reasons, individually and in combination, which Taylor gave for leaving his employment with Hurst.

We reverse the decision of the district court and remand the case to the department with instructions to make new findings of fact and a reasoned decision on the question whether or not Taylor's reasons for quitting disqualify him for benefits, placing on the employer Hurst the burden to prove him disqualified under Iowa Code section 96.5.

REVERSED AND REMANDED WITH DIRECTIONS.