Nicholas A. MASCHINO, Rod Utley, Terry L. Brehm, William J. Everett, Ronald T. Campbell, Robert J. Buelt, Richard D. Peterson, Sue N. Pannkuk, Brian McLoud, Mark R. Tracy, and Judith Foster, Appellants,

v.

GEO. A. HORMEL & COMPANY and Iowa Department of Job Service, Appellees.

No. 84–871.

Supreme Court of Iowa.

July 31, 1985.

C. Joseph Coleman, Jr., of Mitchell, Coleman, Perkins & Enke, P.C., Fort Dodge, for appellants.

James W. Cavanaugh, Austin, Minn., for appellee George A. Hormel & Co.

Blair H. Dewey, Des Moines, for appellee Iowa Dept. of Job Service.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and WOLLE, JJ.

WOLLE, Justice.

The Iowa Department of Job Service (department) denied applications for unem-

ployment benefits filed by the eleven claimants, former employees of Geo. A. Hormel & Company (Hormel). When Hormel closed its Fort Dodge plant where claimants were employed, they exercised options in their collective bargaining agreement first to transfer to other Hormel plants, then to return to the Fort Dodge plant where they were laid off. The district court on judicial review upheld the department's determination that the claimants were disqualified from receiving unemployment benefits because they had left their employment "voluntarily without good cause attributable to [their] employer." Iowa Code § 96.5(1) (1981). We reverse and remand, concluding from the agreed facts in the unusual record before us that the claimants were not disqualified because they did not quit but instead were terminated by Hormel.

The record in this case is unusual because the parties decided to expedite disposition of the judicial review proceedings by streamlining standard procedures. A "pretrial order" that was agreed upon by all parties, including the department, contained three basic provisions: (1) the separate cases of all eleven claimants were consolidated for submission to the district court; (2) the court was asked to decide a single narrow legal issue which would be determinative in all eleven cases—"that issue being a question of 'voluntary leaving' "; and (3) the legal question was to be answered on the basis of agreed facts consisting of the Hormel collective bargaining agreement and a relatively brief statement of the controlling circumstances common to all eleven claimants. In essence, the parties in pretrial proceedings culled from the agency record the facts common to all eleven claimants, condensed the facts into the agreed "issue of circumstance" plus the Hormel labor agreement, and agreed that the court should consider only those facts in deciding the single controlling legal issue.

Neither before the district court nor in this appeal has any party objected to that unorthodox pretrial procedure. Consistent with their agreement to expedite disposition of the cases, the parties have submitted this appeal on an Agreed Statement of the Case filed as the appendix, as permitted by Iowa Rule of Appellate Procedure 15(f). Pursuant to that rule we consider that the agreed statement contains "only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented." We decide this case on the basis of those agreed facts.

A caution is in order. While we encourage the use of pretrial proceedings and agreed statements of fact to expedite the work of counsel and the court, cases like this involving judicial review of agency decisions do not readily lend themselves to some procedures which are specifically designed for original actions.

Courts exercise only appellate jurisdiction in undertaking judicial review of administrative proceedings under the Iowa Administrative Procedure Act. Iowa Code § 17A.19 (1983); *see Public Employment Relations Board v. Stohr*, 279 N.W.2d 286, 290 (Iowa 1979). In reviewing agency decisions involving contested case proceedings, the district court may not consider additional evidence, its review being limited to the record made before the agency. Iowa Code § 17A.19(7) (1983). *See Christensen v. Iowa Civil Rights Commission*, 292 N.W.2d 429, 431 (Iowa 1980) (discovery not ordinarily allowed in judicial review proceedings); *Dillehay v. Iowa Department of Job Service*, 280 N.W.2d 422, 424 (Iowa 1979) (summary judgment is inappropriate in judicial review proceedings). In cases like this the district court reviews the record made before the department to determine whether the decision was affected by an error of law or "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8); *Taylor v. Iowa Department of Job Service*, 362 N.W.2d 534, 537 (Iowa 1985); *Cook v. Iowa Department of Job Service*, 299 N.W.2d 698, 700–01 (Iowa 1980).

■ The parties and the district court are not entirely at liberty to present for judicial review a record different from that on which the agency has based its decision. Some provisions of our rules governing pretrial conferences are inapplicable to judicial review of contested case proceedings. *See* Iowa R.Civ.P. 136–38. Pretrial conference orders in these cases ought not be concerned with such evidentiary matters as judicial notice, factual issues to be litigated, exhibits or witnesses. Iowa R.Civ.P. 136(b) (listing numerous matters which may be considered at a pretrial conference to "aid, expedite or simplify the trial of any issue").

■ The district court would not have had authority in this case to provide by pretrial conference order that it would review a factual record different from that on which the agency based its ruling. The district court's pretrial order here, however, was not flawed in that respect. The order did not expand the evidentiary record made before the department. All parties, including the department itself, simply agreed to abbreviate the record, enabling the district court to focus on those facts in the agency record which were deemed by the parties pertinent to the dispositive legal question in the eleven consolidated cases. The pretrial order, never modified, was as binding on subsequent proceedings here as are the pretrial orders routinely entered in original actions commenced in the district court. Iowa R.Civ.P. 138; *see Kester v. Bruns*, 326 N.W.2d 279, 284 (Iowa 1982).

The parties' agreed statement of the case establishes that all eleven claimants were Hormel employees at its Fort Dodge plant when they were notified that on June 12, 1982 the plant would be closed. The claimants exercised their option to transfer to other Hormel plants pursuant to the following pertinent provisions of their collective bargaining agreement:

*(a) Transfer Rights*

A bargaining unit employee who meets the eligibility requirements specififed in this agreement or inter-plant transfers shall have the right to transfer to a bar-gaining unit job to which his or her inter-plant transfer seniority entitles him or her. . . .

*(b) Eligibility for Transfer*

To be eligible for transfer, the employee must be a permanent bargaining unit employee who has been officially notified of a permanent separation as a result of the closing of the plant or a department, or who received a 52-week notice of lay-off in the case of an annual wage employee. . . .

That agreement further authorized a trial period of employment:

*(f) Trial Period*

Any employee who is transferred in accordance with this agreement on inter-plant transfers may at any time, within not to exceed six months from the date of the notification in writing [given by the employee to Hormel] elect to:

. . . .

(3) Relinquish active employment at the transfer plant and revert to the remainder of his or her recall rights at original plant. . . .

The agreed "issue of circumstance" through which the parties have presented for judicial review the controlling facts and legal issue in this case states:

The above enumerated appeals presently lodged in the district court deal with one issue, that issue being a question of 'voluntary leaving.' Questions of 'overpayment,' if any, will be resolved by implication in the court's determination in the area of 'voluntary leaving,' for by operation of law there will be no overpayment if no 'voluntary quit' occurred. All matters herein have by agreement been acknowledged as having been filed in a timely fashion through the administrative agency and district court process.

The issue of 'voluntary quit' concerns itself in each of the cases with an identical circumstance. Employees were given notice that their jobs would come to an end at the [Hormel] plant in Fort Dodge on or about the 12th day of June, 1982. Under the terms of [Hormel's labor contract] the employees were given an op-

portunity to seek out work at various [Hormel] plants across the United States. This seeking out of work was to be done on a six month trial basis and if the employees were unable, for any reason, to complete the work at the trial company plant, they could return to the Fort Dodge plant and be in the same position as though they had never left the Fort Dodge plant in the first instance.

Those employees who left the trial plant and returned to the Fort Dodge plant were terminated and placed on the 'recall' list in Fort Dodge of other terminated employees. They then made application for unemployment benefits. Those benefits, ultimately granted by hearing officers at the formal hearing staged, were all reversed on a two to one decision by the appeal board of the [department]. The sole issue before this court is 'whether or not employees who conform to all the requirements of an employment contract with their employer and return, under the agreement, to their original plant and are laid off from that plant, are entitled to job insurance benefits.'

The district court upheld the department's denial of the claimants' applications for unemployment benefits, concluding that they had voluntarily quit work at the transfer plants without good cause attributable to Hormel, within the meaning of Iowa Code section 96.5(1) (1981). The district court wrote:

> The fact that [claimants] quit work at the transfer plant in order to revert to the remainder of the recall rights at the Fort Dodge Hormel plant does not make [their] decision less voluntary or make the cause thereof attributable to Hormel. [Claimants are] not in the same position as the fellow employees who did not transfer and received unemployment compensation. Hormel provided [claimants] with continued employment which remained available at the time [each claimant] relinquished the position at the transfer plant.

■ We are unable to square the district court's decision with the agreed record which unequivocally establishes that the claimants did not voluntarily quit their employment with Hormel. According to the agreed record, quoted above, these eleven claimants "were terminated and placed on the 'recall' list in Fort Dodge of other terminated employees."

The language of the collective bargaining agreement also supports the claimants' contention that they were terminated and did not quit. It provided that the claimants could transfer to other plants for a "trial period" without adversely affecting their right within six months to revert to their employment relationship with Hormel at Fort Dodge. Although Hormel and the department contend that the claimants upon transfer immediately became permanent employees of the transfer plants, we find in the collective bargaining agreement a contrary intention. The claimants were at other plants on a six month trial period and never gave up their right to be considered permanent employees of the Fort Dodge plant, temporarily working at other plants on a trial basis only. None of the employees remained at the transfer plants past the six month trial period when they would have become permanent employees of Hormel at its transfer plants. By its act of terminating the employees and placing them on a recall list at Fort Dodge, Hormel acknowledged that they had satisfied the requirements of the labor contract for reverting to the status of terminated employees at that plant. Hormel severed their employment relationship—terminating them and placing them in a laid-off status—at the time they exercised their rights to retain their employment relationship with Hormel at Fort Dodge, returned there, and were laid off for lack of work at that plant.

■ The parties have cited no department rules or case authorities which assist us in applying to the agreed facts of this case the language of Iowa Code section 96.5 (1981), which disqualifies employees from receiving unemployment benefits when they have left their work "voluntarily without good cause attributable to [their] employer." Hormel and the department

ask us to look to the guide for interpretation found in Iowa Code section 96.2 (1981), which declares as a matter of state public policy that unemployment reserves should be "used for the benefit of persons unemployed through no fault of their own." There is, however, no suggestion in the statement of agreed factual circumstances that the claimants lost their Fort Dodge jobs through fault of their own. Moreover, we interpret the employment security statute liberally to achieve the legislative goal of minimizing the burden of involuntary employment. *See Brumley v. Iowa Department of Job Service*, 292 N.W.2d 126, 129 (Iowa 1980); *Smith v. Iowa Employment Security Commission*, 212 N.W.2d 471, 472–73 (Iowa 1973).

The department erred in determining under the agreed circumstances confronting these eleven claimants that Iowa Code section 96.5 (1981) disqualified them from receiving unemployment benefits.

We reverse the decision of the district court and remand the unemployment compensation cases of the eleven claimants to the department, directing it to grant them unemployment benefits, provided they are otherwise eligible.

REVERSED AND REMANDED WITH DIRECTIONS.