Rose Marie LIPP, Petitioner and Appellant,

v.

JOB SERVICE NORTH DAKOTA, Respondent and Appellee,

and

Joe Vetter Insurance Co., Respondent.

Civ. No. 900431.

Supreme Court of North Dakota.

April 18, 1991.

Dietz & Little, Bismarck, for petitioner and appellant; argued by Stephen D. Little.

Mary Norum Hoberg, Asst. Atty. Gen. (argued), Atty. General's Office, Bismarck, for respondent and appellee.

GIERKE, Justice.

Rose Marie Lipp appeals from a district court judgment affirming the decision of Job Service North Dakota (Job Service) denying her claim for unemployment benefits. We reverse and remand to Job Service.

Lipp was employed for approximately 22 years as a secretary for Joe Vetter Insurance Company. At the time she left Joe Vetter's employ, she was receiving $6.10 per hour for 30 to 35 hour work week, 3 weeks paid vacation and 1 week paid sick leave. She resigned from her position, effective March 30, 1990 and thereafter filed a claim with Job Service for unemployment benefits stating that she quit her position because she wasn't given a raise, she didn't receive promised yearly bonuses and her employer quit paying the premiums on her life insurance policy which was purchased for retirement purposes.

Job Service denied unemployment benefits, concluding that Lipp left her employment without good cause attributable to her employer. The agency found that Lipp quit her employment because of dissatisfaction with her remuneration. The agency reasoned that dissatisfaction with salary is not a cause attributable to the employer for quitting employment.

Lipp argues that the agency's findings were incomplete, claiming that salary was not the only cause for leaving. She argues that the agency erred in concluding that she voluntarily quit her job without good cause attributable to her employer. We agree.

■ Section 28–32–19, N.D.C.C., governs the scope of our review of administrative agency decisions. The question whether a claimant quit without good cause attributable to her employer is a factual conclusion. Our review of factual conclusions is limited to a determination of whether those findings of fact are supported by a preponderance of evidence. *Erovick v. Job Service North Dakota*, 409 N.W.2d 629, 631 (N.D.1987). In determining whether or not the agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could reasonably have determined that the factual conclusions were supported by the weight of the evidence. *Six v. Job Service North Dakota*, 443 N.W.2d 911, 912 (N.D.1989).

Section 52–01–05, N.D.C.C., declares a public policy of this state supporting a system of unemployment compensation. Tempering that public policy is Section 52–06–02 which limits the availability of benefits:

"An individual is disqualified for benefits:

"1. For the week in which he has left his most recent employment voluntarily without good cause attributable to the employer, and thereafter until such time as he:

"a. Can demonstrate that he has earned remuneration for personal services in employment equivalent to at least eight times his weekly benefit amount as determined under section 52–06–04; and

"b. Has not left his most recent employment under disqualifying circumstances."

This section relieves employers from responsibility for benefits to employees who

quit for causes unconnected with work. *See, Lord v. Job Service North Dakota*, 343 N.W.2d 92 (N.D.1984).

■ In *Newland v. Job Service North Dakota*, 460 N.W.2d 118, 121 (N.D.1990), we said:

"We believe Sections 52–01–05 and 52–06–02, N.D.C.C., indicate that the Legislature, in enunciating a public policy to provide unemployment compensation, intended to strike a balance between the rights of the unemployed worker who genuinely wants to work, contained in Section 52–01–05, and the protection of the former employer from quits that have nothing to do with the employer or the employment, furthered by Section 52–06–02."

Job Service, in determining eligibility for compensation, must be attuned to that balance. *Id.* However, because unemployment compensation laws are remedial legislation, the balance should be struck in favor of the employee. *Id.*

As stated above, Lipp presented evidence of three reasons for quitting: 1) dissatisfaction with the amount of salary; 2) the failure to pay bonuses; 3) the failure to fund her life insurance policy.

■ Where a claimant has adequately informed the agency of all her asserted reasons for quitting, she is entitled to have Job Service consider each of those reasons. *Newland, supra* at 122 (citing *Taylor v. Iowa Department of Job Service,* 362 N.W.2d 534 (Iowa 1985)). Nothing in our unemployment compensation law suggests that a claimant must rest her entire claim to compensation on one reason for quitting a job. Thus, where several reasons are asserted, Job Service must consider all reasons which may have combined to give the claimant good cause to quit, then consider whether any of those reasons was a cause attributable to the employer. *Id.* If any good cause reason, supported by sufficient evidence, is attributable to the employer, then benefits should be awarded notwithstanding the existence of other disqualifying reasons. *Id.*

■ In the instant case, Job Service purported to find but one reason for Lipp's leaving, her dissatisfaction with her salary.

We agree with Job Service that ordinarily, an employee's dissatisfaction with her salary is not good cause attributable to the employer. To hold otherwise would allow an employee with nothing more than personal conviction that her services are worth more than she is paid, to improperly burden the resources of Job Service. *See, Snyder v. Com. Unemployment Compensation,* 54 Pa.Cmwlth. 425, 421 A.2d 530 (1980), *Cowles Publishing Co. v. Employment Security Dept.,* 15 Wash.App. 590, 550 P.2d 712 (1976), *Perry v. Brown,* 162 So.2d 444 (La.App.1964).

■ Lipp also provided evidence that she did not receive yearly bonuses as promised. Normally, bonuses are not part of a salary contract. Rather, payment of bonuses is usually within the prerogative of management and would not constitute good cause unless they are promised. *See Kessler v. Industrial Commission,* 27 Wis.2d 398, 134 N.W.2d 412 (1965). However, there are no findings by the agency regarding whether the bonuses were promised and were not paid.

The third reason for quitting advanced by Lipp was her employer's failure to fund her life insurance policy. The few jurisdictions which have dealt with this type of good cause issue have consistently held that an employee has good cause attributable to the employer to resign when the employer has reduced benefits. *See Helmin v. Griswold Ribbon & Typewriter,* 345 N.W.2d 257 (Minn.App.1984). Here again, Job Service made no findings relevant to the alleged termination of the life insurance policy as a reason for quitting.

Accordingly, we reverse the district court's judgment affirming the denial of benefits and remand to Job Service with instructions to redetermine, consistent with this opinion, whether Lipp is entitled to benefits.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.