Bradley W. BOSWELL, Appellant,

v.

The IOWA BOARD OF VETERINARY
MEDICINE, Appellee.

No. 90–543.

Supreme Court of Iowa.

Nov. 20, 1991.

William Kutmus of Kutmus & Penning-
ton, and Lylea Dodson Critelli of Nick Cri-
telli Associates, P.C., Des Moines, for ap-
pellant.

Bonnie J. Campbell, Atty. Gen., and Lyn-
ette A.F. Donner, Asst. Atty. Gen., for
appellee.

Considered by McGIVERIN, C.J., and
LARSON, NEUMAN, SNELL, and
ANDREASEN, JJ.

NEUMAN, Justice.

The Iowa Board of Veterinary Medicine (board) charged Dr. Bradley W. Boswell, a licensed veterinarian, with conduct falling below the standard of veterinary practice in this state. Following a hearing on the charges, Boswell's license was revoked and he was ordered to pay a civil penalty of $1000. He petitioned for judicial review and, following a limited remand to the agency, the decision was affirmed by the district court.

The matter is now before us on Boswell's appeal and the board's cross-appeal from the court's ruling. In support of reversal, Boswell challenges the sufficiency of the evidence to support the board's decision and procedural irregularities that allegedly denied him a fair hearing. For its cross-appeal, the board argues that despite the affirmance of its decision, the court demanded a higher standard of proof than required by the Iowa Administrative Procedure Act (IAPA). We affirm on the appeal and reverse on the cross-appeal but do not remand.

I. *Scope of Review.* Section 17A.19(8) of the IAPA governs judicial review of the actions of the Board of Veterinary Medicine. *See* Iowa Code § 169.14(8) (1989) (appeal provisions of Veterinary Practice Act). On appeal, our sole task is to correct legal error, if any, infecting the agency's decision. *Klein v. Department of Revenue & Fin.*, 451 N.W.2d 837, 839 (Iowa 1990); *see* Iowa Code § 17A.19(8) (listing legal standards applicable to agency action). Our review of the agency's factual findings is strictly circumscribed. Those findings are binding upon us so long as they are supported by substantial evidence in the record made before the agency. *Maschino v. Geo. A. Hormel & Co.*, 372 N.W.2d 256, 258 (Iowa 1985).

II. *Background Facts and Proceedings.* Boswell has been licensed to practice veterinary medicine in Iowa since 1981. In 1984 he stipulated to a 60–day suspension of his license for authorizing a nonveterinarian to draw blood samples in violation of federal regulations. Many of the charges in the present case similarly related to Boswell's alleged failure to properly supervise employees and others in the discharge of statutorily defined veterinary practices. He was also accused of falsifying test records through the deliberate or negligent intermixing of blood samples; violating FDA regulations regarding use of illegal animal drugs; receiving and repackaging bulk animal drugs in violation of FDA standards; extending medications with the use of water instead of approved diluents; and overcharging clients for animal feed.

In accordance with Iowa Code section 169.14(3), the matter was tried to a panel of two veterinarians and one layperson, all of whom are members of the board. An administrative law judge (ALJ) presided over the hearing. During the hearing, the administrative secretary of the board, Walter D. Felker, D.V.M., sat with the panel members. This latter circumstance forms the basis for one of appellant's charges of procedural irregularity.

The case against Boswell rested largely on the testimony of two former employees, Shelley Quandt and Sue Rooda. On the issue of false test reports, both of them testified regarding an incident occurring on Rooda's first day at the clinic. While performing anaplasmosis [1] testing on four cattle, the women found that the samples had hemolyzed and could not be used. They testified that Boswell instructed Quandt to "pour over" sufficient blood from samples taken from another client's herd to make up for the frozen samples. On another occasion, when brucellosis [2] testing of eleven sows yielded only ten adequate samples of blood, Boswell reportedly told Rooda to "fudge a little" by borrowing serum from one of the other test tubes. Boswell gave these directions from his truck phone. Another veterinarian who was accompanying Boswell at the time overheard the conversation and corroborated Rooda's statement. Later that same month, when brucellosis testing of forty-two sows unexpectedly

---

1. Anaplasmosis is a blood-borne disease that destroys red blood cells in cattle.

2. Brucellosis is a type of bacterial infection that frequently results in abortions in animals.

yielded only forty samples of blood, Boswell reportedly directed a veterinary technician, Becky Roepke, to divide the available samples to make forty-two. In each instance, Boswell certified to state and federal laboratories that the specimens were accurate.

Evidence of Boswell's alleged misuse of animal drugs rested on the testimony of FDA inspectors and Boswell's employees. This testimony revealed that chloramphenicol, a drug banned by the FDA in 1986, was routinely used by Boswell to treat small hogs for scours.[3] Quandt reported that when an FDA investigator visited the clinic in 1987, Boswell advised her to remove the drug from the clinic and place it in a nearby horse barn. Thereafter clinic staff secured the drug when needed from the barn. On a subsequent visit by an investigator Boswell denied having or using the drug, but on a third trip to his clinic an investigator discovered twenty-six bottles of chloramphenicol in the horse barn.

Evidence also revealed that Boswell purchased bulk drugs approved by the FDA and then combined them in mixtures and dosages without applying for new animal drug permits. As will be explained further in this opinion, this practice by veterinarians is not without controversy. Boswell felt he was in compliance with pertinent FDA regulations, but the investigators—and ultimately the hearing panel—thought otherwise.

Two veterinarian technicians testified that Boswell extended some vaccines and a cattle wormer, Ivermectin, with water. Expert testimony was given to show that such practice does not conform to the minimum standard of prevailing veterinary practice in this state.

Finally, Boswell's employees cited billing practices in which the number of tons of feed sold was overstated at Boswell's direction thereby resulting in excessive charges to clients. Employees also testified that they were regularly required to perform unsupervised surgical procedures such as neutering and declawing cats and anesthetizing dogs and cats, without Boswell's direct supervision.

By way of defense to this evidence, Boswell conceded that substituting and intermixing of blood samples, falsely certifying blood specimens, authorizing surgical procedures by unlicensed persons, and dishonesty with respect to billing would—if proven—violate state and federal statutes and administrative rules and constitute misconduct falling below veterinary medicine standards. He argued strenuously, however, that these acts did not occur. Regarding the other matters alleged, he argued that some fell within a "gray area" subject to honest divergence in professional opinion, and others were so minor as to not warrant discipline.

Following hearing, the panel found Boswell's acts violated the following state and federal statutes and administrative regulations: Iowa Code § 169.13(1), (3), (5), and (7) (prohibiting veterinarians from deceptive practices, violating state or federal laws regulating veterinary medicine, knowingly procuring or advising a person to unlawfully practice veterinary medicine, willfully departing from the minimal standard of acceptable and prevailing practice of veterinary medicine); 9 C.F.R. § 161.-3(b), (d), (h), and (j) (standards for the withdrawal and testing of animal blood samples); 21 U.S.C. § 351(a)(5) (prohibiting use or sale of chloramphenicol after January 23, 1986); 21 U.S.C. § 352(a), (e), (f), and (i); 21 U.S.C. § 331(g), (p); 21 U.S.C. § 360(b); and 21 C.F.R. § 510.6(c) (pertaining generally to the sale or repackaging of bulk animal drugs); 811 Iowa Admin.Code 12.2 (regulating extra-label use of veterinary drugs and vaccines); and 811 Iowa Admin.Code 8.5(2)(a) and 8.7 (prohibiting unsupervised surgical procedures by a veterinary assistant and charging veterinarian with ethical and legal responsibility for actions of assistants). On judicial review, these findings of fact and conclusions of law were upheld by the district court.

---

**3.** Scours is diarrhea caused by an intestinal infection.

III. *Appellate Issues.*

■ A. *Burden of proof.* From the outset the parties have debated the fundamental matter raised by the board's cross-appeal: the appropriate standard of proof in an action to discipline a veterinarian. Over the objection of Boswell's counsel, the hearing panel was advised to render its disciplinary decision based on the "preponderance of evidence" standard. When Boswell subsequently petitioned for judicial review, he successfully urged the district court to remand the matter to the agency for reconsideration under a standard of "clear and convincing evidence." The panel filed a supplemental decision holding that its earlier findings were justified even under the higher standard of proof. The question is whether the court erred when it required that the evidence before the board meet this higher standard.

Since the district court's ruling in this matter, we have addressed the same issue with respect to disciplinary actions against medical doctors. In *Eaves v. Board of Medical Examiners,* 467 N.W.2d 234 (Iowa 1991), we observed that at common law such actions required proof only by a preponderance of the evidence, and such standard is sufficient to pass constitutional muster. *Id.* at 237 (citing *State v. Brown,* 218 Iowa 166, 170, 253 N.W. 836, 838 (1934), and *In re Polk,* 90 N.J. 550, 567–69, 449 A.2d 7, 16 (1982)). Thus we held the correct standard in medical disciplinary cases to be proof by a preponderance of the evidence. *Id.*

We are not persuaded by appellant's plea that we establish a more stringent standard for the suspension or revocation of veterinarians' licenses. Both professions are governed by licensing boards whose procedures are subject to the Iowa Administrative Procedure Act. Moreover, this record demonstrates that the practice of veterinary medicine, at least insofar as food-producing animals is concerned, may have an impact on the health of humans as well as animals. In the absence of evidence that the legislature intended to treat these professions differently with respect to the quantum of proof necessary to justify disciplinary action, we will treat them similarly.

Thus we hold that proof in a veterinarian disciplinary proceeding must be established by a preponderance of the evidence. Although the district court erred with respect to this determination and must be reversed, we need not remand. Implicit in the court's decision is its finding that discipline would have been warranted even applying a lower threshold of proof.

■ B. *Procedural fairness.* Iowa Code section 169.14(1) authorizes the board of veterinary medicine to request personnel in the department of inspections and appeals to investigate complaints made against licensed veterinarians. Thereafter, upon reviewing the investigator's findings, the board may find that a hearing is warranted. *Id.* Notice is prescribed by statute with service as in ordinary actions. *Id.*

In this case, the statement of charges against Boswell was signed on behalf of the board by Dr. Walter D. Felker, the "state veterinarian" who serves as secretary of the board. *See* Iowa Code § 169.-5(1) (authorizing composition of state Board of Veterinary Medicine and designating state veterinarian as secretary). This ministerial act of signing the complaint was Felker's first involvement in a disciplinary matter. As might be expected, he appeared for the hearing. The record reveals that when he asked where to sit, the ALJ directed him to sit with the other members of the board. Pursuant to statute, these board members were serving as hearing officers in this case. Iowa Code § 169.-14(3).

The acuity of hindsight tells us that the ALJ's seating assignments were not well thought out. Although the administrative secretary works closely with the board, his role in this case was not that of hearing officer. On appeal Boswell asserts that Felker's interaction with the board during the hearing violated due process and warrants a new hearing.

The reversal sought rests on proof of questionable appearances, not actual prejudice. Felker testified before the district court that he and the panel members did no more than exchange pleasantries. He ap-

parently glanced at the documentary evidence as it was introduced and circulated among the panel members. The record is clear, however, that he took no part in the deliberation on the fate of appellant's license.

Iowa Code section 17A.17(1) generally prohibits ex parte communication by fact finders with any person or party on issues of fact or law in a contested case. The statute also provides, however, that the decision makers may speak to members of the agency, and others who have no personal stake in the proceeding, for the purpose of securing aid and advice. *Id.*

Appellant contends that the prosecutorial and adjudicatory distinctions were unlawfully blurred in this case. The district court disagreed, and so do we. Apart from his signature on the complaint, and the administrative duty that might entail, Felker did not act as either investigator or prosecutor in this case. There is no proof that while seated with the panel members he communicated with them on issues pertinent to the case. Even if he had, the statute allows him to share his expertise as a veterinarian so long as he is acting neither as a prosecutor nor advocate. *See Eaves*, 467 N.W.2d at 236–37 (no unconstitutional combination of prosecutorial and adjudicatory functions in disciplinary action when executive director of medical board signed complaint but did not otherwise advocate for or participate in decision making). No ground for reversal appears.

■ C. *Seventh Circuit authority.* In its written analysis of the legal issues surrounding Boswell's use of bulk animal drugs, the hearing panel cited an opinion from the United States Court of Appeals for the Seventh Circuit, *United States v. 9/1 KG. Containers*, 854 F.2d 173 (7th Cir.1988), *cert. denied*, 489 U.S. 1010, 109 S.Ct. 1118, 103 L.Ed.2d 181 (1989). In that opinion the court recognized that many veterinarians, frustrated by the slow pace at which the FDA approves new drugs, have for years circumvented the approval process by simply purchasing the active ingredients and prescribing concoctions as their professional judgment dictates. *Id.* at 174–

75. It rejected, however, a drug supplier's argument that enforcing labeling requirements on veterinarians as well as pharmaceutical companies unnecessarily interfered with doctors' freedom to practice the healing arts. *Id.* at 176–78. It upheld the FDA's interpretation of its own statute by holding that 21 U.S.C. section 352(f) and 21 C.F.R. section 201.122 lawfully restrict the sale of bulk drugs that can be used to produce "new" drugs to firms that hold approved new animal drug permits. *Id.* at 178.

One of the drugs that was at the center of the controversy in *9/1 KG. Containers*, Dimetridazole, is the same drug Boswell bought in bulk, mixed with another drug, and sold to farmers for the treatment of pig scours. Boswell labeled his concoction DSME. Clients were directed to mix a prescribed dose of DSME with a ton of feed.

Boswell argued before the district court, and now asserts on appeal, that he understood the FDA regulations to be aimed at drug suppliers, not veterinarians. Hence he claims he was not only taken by surprise, but deprived of due process, when the hearing panel relied on a case from the Seventh Circuit to support its conclusion that he violated federal drug regulations.

We find no merit in appellant's contention. A U.S. circuit court's interpretation of federal law is, of course, binding on neither an Iowa agency nor this court. Such opinions can, however, provide very persuasive authority on questions in controversy. Here, the Seventh Circuit opinion did not supplant the decision of the agency, but merely aided it. In the context of this case, the *9/1 KG. Containers* opinion was highly instructive and its reasoning and holding pertinent to the facts before the agency. The fact that the authority came from the Seventh Circuit, instead of the Eighth, is immaterial. The district court was correct in rejecting appellant's claim of due process violation.

■ D. *Sufficiency of evidence.* As noted earlier in this opinion, Boswell does not claim that the violations charged would not warrant discipline if proven. Rather,

he claims that the evidence is insufficient to prove misconduct. Specifically, he accuses the hearing panel of rejecting his word in favor of the testimony of two disgruntled former employees.

Clearly mindful that its decision rested in large part on the credibility of witnesses, the panel's decision repeatedly cited reasons for crediting one witness' version of events over another's. In most, but not every, instance the panel found the agency's witnesses more credible. Thus, for example, Boswell tried to refute one of the allegations of "pouring over" blood samples by calling the client whose forty-two sows had been bled. But the panel found, without discrediting the client, that he had no knowledge of what happened to the samples after they left his farm. By contrast, the panel apparently believed the other veterinarian who, with no apparent ax to grind, overheard Boswell telling his staff to "fudge a little" on the tests.

It would unduly lengthen this opinion to detail the other judgments made by the panel on matters of credibility. Moreover, we find the evidence of FDA regulatory violations, essentially uncontested by Boswell, sufficient by themselves to warrant action by the board. As in all appeals from administrative agency action, "[t]he question is not whether evidence might support a different finding but whether there is substantial evidence to support the finding actually made." *Eaves*, 467 N.W.2d at 237. We think the agency has amply met its burden here.

In summary, we affirm the district court decision upholding the disciplinary action taken by the Board of Veterinary Medicine against Bradley Boswell. On the board's cross-appeal, we agree that the standard of proof in these cases is a preponderance of the evidence. We reverse the district court on this point but do not remand.

AFFIRMED ON APPEAL, REVERSED ON CROSS-APPEAL BUT NOT REMANDED.