Mavis WARD, Surviving Spouse of Lloyd
Ward, Appellant,

v.

IOWA DEPARTMENT OF TRANSPOR-
TATION and Iowa Industrial
Commissioner, Appellees.

No. 65214.

Supreme Court of Iowa.

April 15, 1981.

David D. Drake, Des Moines, for appel-
lant.

Thomas J. Miller, Atty. Gen., and Thomas A. Evans, Jr., Asst. Atty. Gen., for appellees.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

HARRIS, Justice.

Sitting on judicial review of agency action the district court affirmed the industrial commissioner's denial of death benefits. On petitioner's appeal to us we also affirm.

Lloyd R. Ward, the petitioner's decedent, was an employee of Iowa's department of transportation. On May 20, 1975, he was engaged on a highway crew and responsible for cleaning debris from concrete. This accumulation was created by a concrete saw which was used to cut expansion joints in the highway.

Ward's shovel became caught in the saw and twisted so that he was knocked to the ground. Ward avoided the blade by pushing his legs against the saw but, in making his escape, he felt a pulling sensation in his back. Several days later he was hospitalized for treatment of pain and discomfort in his legs and lower back.

He remained in the hospital for 13 days, complaining of almost constant low back pain. Hospital physicians were, however, unable to find evidence of a herniated disc or nerve root compression. Ward was diagnosed as having recurrent lumbar back strain and a possible facet impingement syndrome. When discharged from the hospital he continued outpatient therapy. Because of his condition he was unable to return to work.

In February 1976 Ward sought the services of Dr. Donald D. Weir at the rehabilitation center of a Cedar Rapids hospital. Thanks to this treatment there were periods when his physical condition seemed to improve but in May 1976 he was again in acute pain and was again hospitalized.

On August 23, 1976, Dr. Weir noted in a report that Ward continued to have problems with back pain and was able to get along only by remaining almost immobile. Any activity caused an increase in back symptoms, pain, and tightness in the legs. The doctor thought it would be impossible for Ward to return to any work that called for repetitious bending, reaching, lifting or stooping. Dr. Weir though Ward was 30 percent disabled.

On August 29, 1976, Ward's workers' compensation benefits ceased without hearing and without notice. His widow testified this greatly upset him because he found himself without income, without workers' compensation benefits, and without enough money to meet his family's daily needs. She said Ward came under stress and experienced anxiety, depression, and weakness because of his pain, lack of mobility, physical problems, and lack of income.

When he last saw Ward on November 29, 1976, Dr. Weir noted he had been gaining weight and his condition had deteriorated. Dr. Weir attributed this to his inactivity. Ward died December 19, 1976, of acute subendocardial myocardial infarction.

The petitioner, as Ward's widow, filed this proceeding which, by amendment, became a petition for review reopening. It is the petitioner's contention that Ward's death resulted from his employment injury on May 20, 1975. The deputy industrial commissioner decided the petitioner failed to establish her claim. On appeal to the Iowa industrial commissioner under section 86.24, The Code 1981, that decision was adopted and affirmed. This appeal under section 17A.19, The Code, followed.

I. The scope of our review of the industrial commissioner's decision is not de novo; the findings of the commissioner have effect of a jury verdict. *Paveglio v. Firestone Tire & Rubber Company*, 167 N.W.2d 636, 640 (Iowa 1969). The commissioner, not the court, weighs the evidence. The court should broadly and liberally apply those findings in order to uphold rather than defeat the commissioner's decision. *Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 298 (Iowa 1974). The question on judicial review is not whether the evidence might support a different finding but

whether the evidence supports the findings the commissioner actually made. Hence the findings of the commissioner are binding on appeal unless a contrary result is demanded as a matter of law. *Wetzel v. Wilson*, 276 N.W.2d 410, 412 (Iowa 1979).

II. The most troublesome question here derives from the form, or lack of form, of the deputy's decision, the one adopted by the commissioner. We have previously pointed out the crucial importance of the following requirement of section 17A.16(1):

> A proposed or final decision shall include findings of fact and conclusions of law, *separately stated*. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Each conclusion of law shall be supported by cited authority or by a reasoned opinion. [Emphasis added.]

Our experience in past cases, as well as here, indicates a reluctance or inability to comply with the requirement of separately stating the facts and the conclusions of law. *See Hawk v. Jim Hawk Chev-Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979); *Second Injury Fund v. Mich Coal Co.*, 274 N.W.2d 300, 304 (Iowa 1979); *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d 506, 510 (Iowa 1973).

The decision here detailed the conflicting factual contentions of the parties but did not make any specific findings. Rather, blended and mixed into the statement of the parties' factual contentions, is only the general observation that the petitioner failed to meet her burden of proof. With considerable justification the petitioner cites this failure as her first assignment of error.

It should be unnecessary for us to justify the utility of a statutory requirement. The commissioner, and we, should comply with any such clear statutory requirement, if for no other reason than its imposition by the legislature. Nevertheless the usefulness of the requirement can be easily demonstrated by considering our limited scope of review of agency action.

■ Tremendous authority and responsibility is imposed in the agency by the act. Because of the severely limited extent of relief available on judicial review, the losing party is plainly entitled to know precisely what facts have been found. Such a party is also entitled to a detailed statement of the commissioner's legal conclusions and the application of those conclusions upon the facts thus found. Lacking the clear and detailed outline required under section 17A.16(1), losing litigants are at a loss to know whether they should seek judicial review. It is crucial that a party be able to learn whether an adverse determination was factual (in which case the litigant is generally powerless) or legal (in which case the litigant can search for error). *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 907 (Iowa 1976). It goes without saying that this knowledge is important not only to the litigant but as well for the courts sitting in judicial review. Sometimes the commissioner, sitting as finder of fact, will be unable to make a finding on some important factual claim of the litigant. When this occurs the commissioner owes it to the litigant to say so and give the reasons. The written decision here did not set forth findings of fact and did not separately state any conclusions of law. After our prior references to the statutory requirement this continued failure of compliance is disappointing.

We are then at the familiar point of choosing between enforcing a clear procedural requirement or fear that we are setting a precedent for not doing so. We often face this choice. On the one hand lurks the danger that technicalities and form will take charge over the merits of a controversy. On the other hand is the obvious need of a workable system for processing controversies. Behind every procedural rule lies at least the hope that the public interest will be served by it. When, as sometimes happens, this hope proves to be unjustified the rule should be abolished.

But, it should be unnecessary to say, until the rule is abolished it is plainly in the public interest that it be enforced.

■ On the other hand it must be admitted that, beginning with the deputy commissioner's summary statement, it is possible to work backward and to deduce what must have been his legal conclusions, and his findings of fact. It should be unnecessary for us to do so. Without suggesting any willingness to continue the practice, we elect in this case to undertake this process and reach the merits of the controversy. So doing, we reject the petitioner's first assignment of error.

III. Turning to the merits, we find that the commissioner's decision falls easily within his prerogative under this record. There was conflicting testimony from two doctors. The commissioner could have, but was not required to, conclude from the petitioner's witness, Dr. Weir, that Ward's fatal heart attack was work related. The department's medical witness, a board certified pathologist, examined Ward's medical records and testified he could not find a causal connection between the initial injury and Ward's death. Neither could he find a causal connection between Ward's anxiety and his death.

In *DeShaw v. Energy Manufacturing Company*, 192 N.W.2d 777, 780 (Iowa 1971), we said:

> When a workman sustains an injury, later sustains another injury, and subsequently seeks to reopen an award predicated on the first injury, he must prove one of two things: (a) that the *disability* for which he seeks additional compensation was proximately caused by the first injury, or (b) that the *second injury* (and ensuing disability) was proximately caused by the first injury. [Emphasis in original]

In *Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d at 297, we said:

> A heart attack, if attributable to the employment, is a compensable "injury," although the claimant already had latent heart disease. [Authority.] The claimant has the burden of proving by a pre-

ponderance of the evidence that some employment incident or activity brought about the health impairment on which he bases his claim. [Authorities.] A possibility is insufficient; a probability is necessary. [Authority.] The incident or activity need not be the sole proximate cause, if the injury is directly traceable to it.

■ We are not free to interfere with the commissioner's findings where there is conflict in the evidence or when reasonable minds might disagree about the inferences to be drawn from the evidence whether disputed or not. *Catalfo v. Firestone Tire & Rubber Co.*, 213 N.W.2d at 509. Reasonable minds might differ on petitioner's claim. Hence we are bound to affirm.

■ Because of the likelihood that the form of the commissioner's decision impelled petitioner to seek judicial review we order the costs on appeal to be taxed to appellees.

AFFIRMED.