NEW HOMESTEAD, Appellee,

v.

IOWA DEPARTMENT OF JOB
SERVICE, Appellant,

And Concerning Barbara E.
Garloch, Respondent.

No. 66541.

Supreme Court of Iowa.

July 21, 1982.

Walter F. Maley, Blair H. Dewey and
Joseph L. Bervid, Des Moines, for appellant.

R. E. Feilmeyer of Taylor, Taylor & Feil-
meyer, Guthrie Center, for appellee.

McCORMICK, Justice.

The question here is whether substantial evidence supports an Iowa Department of Job Service decision that claimant Barbara E. Garloch was available for work and earnestly and actively seeking work and therefore eligible for unemployment compensation. The district court held that the agency decision lacked sufficient evidentiary support. We reverse.

Under section 96.4(3), The Code, unemployment compensation may only be awarded to a person who "is able to work, is available for work, and is earnestly and actively seeking work." A claimant has the burden of proof on the issue. *Davoren v. Iowa Employment Security Commission*, 277 N.W.2d 602, 603 (Iowa 1979).

■ Job Service has adopted regulations implementing the statutory requirement. The availability requirement is spelled out in 370 I.A.C. section 4.22(1)(b). Insofar as relevant here, the individual must be "willing, able, and ready to accept suitable work which the individual does not have good cause to refuse, that is, the individual [must be] genuinely attached to the labor market." *Id.* A labor market exists when the type of services that the individual is offering are generally performed in the geographical area. It does not mean that job vacancies must exist. *Id.*

■ The person's duty to seek work earnestly and actively is addressed in 370 I.A.C. section 4.22(1)(c). Insofar as relevant here, the individual must act "as a normal, prudent person who is out of work and seeking work." *Id.* at § 4.22(1)(c)(1). The determination of compliance depends on the circumstances of each case:

Much will depend on the estimate of the employment opportunities in the area. The number of employer [contacts] which might be appropriate in an area of limited opportunity might be totally unacceptable in other areas. When employment opportunities are high a claimant may be expected to make more than the usual number of contacts. Unreasonable limitations by a claimant as to salary, hours

or conditions of work can indicate that such claimant is not earnestly seeking work.

*Id.*

■ Job Service's factfindings are binding upon review if supported by substantial evidence. Evidence is not insubstantial merely because it would have supported contrary inferences. It is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Ellis v. Iowa Department of Job Service*, 285 N.W.2d 153, 156 (Iowa 1979).

In the present case, Job Service adopted the decision of its hearing officer. His findings of fact were as follows:

Barbara E. Garloch was employed as a nurses' aide by New Homestead until October 1, 1978 when she voluntarily quit. She was subsequently employed by the United States Postal Service, an insured employer, where she worked in and was paid wages in excess of ten times her weekly benefit amount. A claim was filed effective June 24, 1979. The claimant received a deputy's decision which named New Homestead as a respondent. When she called New Homestead on or about July 16, 1979, she was offered her old job again. The claimant did not accept the employer's offer. She declined to do so because the job paid just five cents above minimum wage. It was her intention to accept employment again with the Bulk Mail Center, U.S. Postal Service, when recalled in the winter of 1979. She has been searching for work in the Guthrie Center area and would accept a job paying near to the wage she had formerly received which was $4.96 [sic] per hour.

In reversing a deputy claims officer's decision denying benefits, the hearing officer reasoned:

The issue here is not refusal of work by the claimant but whether her failure to accept such work reflects adversely on her availability. Having considered the testimony and evidence the hearing officer concludes that the claimant is not unduly limiting her availability. Her

search for work demonstrates no such limitation, nor does the fact that she looks forward to accepting work with the Bulk Mail Center in the future.

The only witnesses at the hearing were claimant and New Homestead's administrator. The administrator testified he had offered Garloch her old nurse's aide job at slightly more than the minimum wage. He said she told him the compensation was inadequate. He testified that when the time and expense of commuting from Guthrie Center to Des Moines was considered he did not believe the difference between that wage and her postal service wage would be significant.

When Garloch testified, the hearing officer asked her about the following statement she signed in her interview with the deputy claims examiner:

I was offered my job back at New Homestead on July 16, '79. The job would be as a nurse aide at minimum wage. I'm not sure which shift was available as I can't remember. I didn't think it was necessary that I work at minimum wage that is why I refused the job. I make a much higher wage at the bulk mail center, $4.76 per hour. It is correct that I told Mr. Jennings that I am waiting to return to work at the post office in December, 1979. This is the federal government procedure to let you work six months and to lay you off to collect unemployment for six months and call you back. The post office is where I want to work so I'll wait to go back there in December of 1979.

Garloch said the deputy had written the statement, and it misrepresented her position. Her testimony included the following:

Well I am looking for work but I am not looking for ... minimum wage work which you have—should have all my letters I've been writing to you.

. . . .

And I have been looking for work and most of my work is for more than minimum wage .... [I]f I thought I was getting paid enough at the Homestead I

would have stayed there but I quit there to start with. But I signed that and I certainly must not just quite understood what I've signed. Because it sounds like that I'm not looking for work and I am, and I have been, and I will continue to look for work.

. . . .

I just ... didn't think about it being that important or I should have really straightened her out.

She testified that she hoped to go back to her postal job if she could not find suitable work in or close to Guthrie Center. She said she had looked for work mostly in county offices. She asserted that during the prior week she had applied at the sheriff's office where she previously worked as a dispatcher and at "U.F.S." She also mentioned that she intended to seek work with a company planning to build a plant near Guthrie Center.

■ The hearing officer made his findings on this record, and Job Service's appeal board adopted them for the agency. We need not decide whether we would have made the same findings. Unless they are without substantial support, we are bound by them. This court does not decide credibility or weigh the evidence de novo.

■ We conclude that the agency's findings have substantial evidentiary support. They are consistent with this court's holding in *Brumley v. Iowa Department of Job Service*, 292 N.W.2d 126 (Iowa 1980), that a claimant is allowed a reasonable period of time to seek work commensurate with the claimant's "customary occupation" without being disqualified for benefits. In that case the claimant could not be disqualified for not expanding her search when Job Service had not advised her to do so. *Id.* at 128–29. The spirit of the *Brumley* holding is reflected in the provision of the present statute, not effective at the time involved here, which permits a claimant to turn down a job during the first five weeks of unemployment unless it meets statutory criteria for suitability and pays as much as the individual's prior job. *See* § 96.5(3)(a)(1).

We cannot say as a matter of law that Garloch's job search evidence is not believable. Nor can we say she was compelled so soon after being laid off to go back to a different kind of work than she had been doing at forty percent less pay. Under the statute and regulations that it has the duty to administer, Job Service made its decision upon substantial evidence. The district court erred in holding otherwise.

REVERSED.

All Justices concur except REYNOLD-SON, C. J., and LeGRAND and LARSON, JJ., who dissent.

LeGRAND, Justice (dissenting).

This is the kind of case which gives a good social program a bad name. The Iowa Employment Security Law (chapter 96, The Code) has for its purpose the payment of prescribed benefits to those who suffer the hardship and privation imposed by involuntary unemployment. In the present case the majority instead confers those benefits upon one who was unemployed by choice, not by necessity.

In order to establish the right to unemployment compensation, a claimant must be one who "is able to work, is available for work, and is earnestly and actively seeking work." § 96.4(3), The Code. The Iowa Department of Job Service has adopted rules implementing this statute. One of these requires a claimant to act "as a normal, prudent person who is out of work and seeking work." 370 I.A.C. § 4.22(1)(c)(1).

In the present case claimant was employed by New Homestead, a nursing home. She left that job voluntarily for a better paying position with the United States Postal Service. After working there approximately six months she was laid off under what she describes as the government policy "to let you work six months and to lay you off to collect unemployment for six months and call you back." In filing her claim she signed a statement in which she said she was waiting to go back to work with the postal service and that the post office is "where I want to work."

The sole question is whether there is substantial support for the hearing officer's finding that claimant was entitled to unemployment compensation under the statute. The district court found such evidence lacking and reversed the finding. On this appeal the majority sides with the hearing officer. I believe the district court reached the proper result and I therefore dissent.

After claimant discovered that her failure to seek work disqualified her for unemployment compensation, she recanted her earlier statement and insisted she had been "misunderstood." She then testified before the hearing officer that she had indeed been looking for work. The hearing officer accepted this statement as substantial evidence of the fact. This completely overlooks the remainder of claimant's testimony explaining what she meant by "seeking work." What she *said* she did and what she *actually* did bear little resemblance to each other. The evidence shows the following facts without dispute:

1. Claimant refused a job offer from her old employer, New Homestead.

2. She testified that over a period of more than nine weeks she sought employment at only two places. One was at the local sheriff's office where she said she could get a job "if we had a different sheriff". Since there wasn't a different sheriff, it is difficult to see how this could be construed as "earnestly and actively seeking work."

3. Her other employment contact was at a place identified in the record only as U.F.S.

4. In addition she said she "intended" to seek work with a company planning to build a plant near Guthrie Center.

This was the sum total of her job endeavors over a nine-week period.

Assuming the U.F.S. contact was made in good faith, this single job inquiry over an extended period does not constitute "being available for work" or "earnestly and actively seeking work", as the statute provides, nor does it comply with the Job Service rule demanding that an individual act

as a "normal, prudent person who is out of work and seeking work."

Taking claimant's testimony as a whole rather than only the statement upon which the hearing officer and the majority rely, I cannot find substantial support for this claim. On the contrary the evidence is undisputed that she refused one job offer; made only one legitimate employment contact; never wavered from her intention to return to the postal service as soon as possible; and was content to bide her time until then while collecting unemployment compensation. Ironically New Homestead, an employer she left voluntarily and whose renewed job offer she rejected, must now contribute to the unemployment compensation she will receive.

REYNOLDSON, C. J., and LARSON, J., join this dissent.