**DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT, Appellant,**

v.

**DEPARTMENT OF JOB SERVICE, and James H. Sorenson, Appellees.**

**No. 85–312.**

Supreme Court of Iowa.

Nov. 13, 1985.

Edgar H. Bittle and Patricia J. Martin of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellant.

Walter F. Maley, Blair H. Dewey, Joseph L. Bervid and Deborah A. Dubik, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ, and WOLLE, JJ.

SCHULTZ, Justice.

The Des Moines Independent Community School District (school district) appeals from a district court judgment on judicial review which affirmed an agency ruling allowing unemployment benefits to a former employee. On appeal, the school district asserts that James H. Sorenson (claimant), a substitute teacher, was ineligible for benefits because he voluntarily quit his employment and he failed to accept suitable work offered to him. We reverse the decision of the district court and hold that claimant is disqualified from receiving benefits because he voluntarily left his work without good cause attributable to his employer.

Claimant was employed by the Federal Service in the third quarter of 1982. Thereafter, he had his name placed on substitute teacher lists at three schools in the Des Moines area, including the school district in this case. Claimant accepted one assignment from the school district and additional assignments from the other two schools during the fourth quarter of 1982. He did not accept any teaching assignments from the school district in either the first or second quarters of 1983. However, claimant accepted substitute teacher assignments from both of the other schools in the first quarter of 1983 and from one of the two other schools in the second quarter.

At the conclusion of the 1982–83 academic year, the school district sent a letter to claimant indicating that the school district would have substitute teaching available to him for the following term. The school district's policy is that a teacher is retained on the substitute list if the first letter it sends is not returned. In August 1983 a second letter was sent to claimant requesting that he confirm if he wished to have continued employment with the school district. Claimant did not return the letter or notify the school district because he assumed that his failure to contact the school district would be indicative of the fact that he was no longer available to substitute teach.

Claimant freely admits that he was not available to continue his employment with the school district for the 1983–84 term. On June 1, 1983, claimant moved from Altoona to Cedar Rapids because of financial reasons. He owned a house in Cedar Rapids which he rented, but the renters later moved out. Claimant testified he could not afford to pay both the rent in Altoona and the house payments on his house in Cedar Rapids. After the move claimant was employed for a short time as a substitute teacher with the Cedar Rapids School District.

Claimant filed an initial claim for unemployment insurance benefits effective October 16, 1983. Initially, a department of job service claims deputy determined that claimant was entitled to benefits. The school district appealed this decision on the grounds that claimant voluntarily quit. On that appeal the hearing officer concluded that claimant was entitled to benefits because: (1) claimant's election not to report for further possible assignment with the school district was not a voluntary quit; and (2) claimant was justified in not accepting suitable work because he no longer resided in the area where the job was offered. Thereafter, the agency's appeal board adopted the hearing officer's findings in a 2–1 decision. On judicial review, the district court determined there was substantial evidence in the record, when reviewed as a whole, to support the agency's decision that claimant was entitled to benefits.

We believe the outcome of this appeal on judicial review depends on whether the claimant voluntarily quit his employment. A claimant is disqualified from receiving benefits when "the individual has left work voluntarily without good cause attributable to the individual's employer." Iowa Code § 96.5(1). The term "left work" has been construed to mean "if he has become unemployed." *McCarthy v. Iowa Employment Security Commission*, 247 Iowa 760, 764, 76 N.W.2d 201, 204 (1956). While the burden of proof is on the claimant to show his entitlement to unemployment compensation, the employer has the burden of proving that a claimant quit his job without cause attributable to the employer. *Taylor v. Iowa Department of Job Service*, 362 N.W.2d 534, 541 (Iowa 1985).

The school district asserts that it has met this burden of proof because it offered claimant continued employment for the following academic year as a substitute teacher. The school district points to undisputed evidence that it sent a letter to claimant at the end of the 1982–83 school term notifying him that he had continued employment for the next term. Additionally, the school district notes that the same information was contained in a letter it sent him in August in which it requested he notify the school district if he wanted to be included on the 1983–84 substitute teacher list. The school district argues that by his failure to return this second letter and decision to move to Cedar Rapids claimant made himself unavailable for work which constitutes a voluntary quit.

In its finding of fact the agency determined that the claimant did not receive the second letter, but no mention was made of the first letter. In a statement made by claimant at his fact-finding interview he admitted that "I received a letter from Des Moines School requesting notice of my availability, however I did not return it because I was no longer living there and therefore not available to them." In light of this admission it is undisputed that claimant was aware the school district had made him an offer of continued employment as a substitute teacher for the 1983–84 term. The question that then arises is whether claimant's failure to accept this offer constitutes a voluntary quit pursuant to Iowa Code section 96.5(1).

The agency relied upon two administrative rules to negate the school district's allegation that claimant voluntarily quit his employment. These rules provide that certain separations from employment are not to be considered voluntarily quits because, in those cases, good cause for quitting is attributable to the employer. 370 IAC 4.26 (1983). The two rules are:

> The claimant was employed on a temporary basis for assignment to spot jobs or causal labor work and fulfilled the contract of hire when each of the jobs was completed. An election not to report for further possible assignment to work shall not be construed as a voluntary leaving of employment.

370 IAC 4.26(19) (1983).

> The claimant was hired for a specific period of time and completed the contract of hire by working until the specific period of time had elapsed.

370 IAC 4.26(22) (1983).

We cannot agree with the agency's conclusion that these rules are applica-

ble to substitute teacher employment. We recognize that administrative rules have the force of law and are presumed valid. *Richards v. Iowa Department of Revenue,* 360 N.W.2d 830, 833 (Iowa 1985). But, because we decide that the agency incorrectly applied its rules to the substitute teacher in this case, we need not decide the validity of these two rules. We give administrative agencies a reasonable range of informed discretion in the interpretation and application of their own administrative rules. *Meads v. Iowa Department of Social Services,* 366 N.W.2d 555, 558 (Iowa 1985). However, we are not bound by the agency's interpretation. It is our duty to determine matters of law which includes the interpretation of a statute or an agency rule which interprets such a statute. *Cosper v. Iowa Department of Job Service,* 321 N.W.2d 6, 10 (Iowa 1982). We do not give deference to an agency's interpretation of its own rules if that interpretation is plainly inconsistent with its rules. *Sommers v. Iowa Civil Rights Commission,* 337 N.W.2d 470, 475 (Iowa 1983).

The substitute teacher in this case was not involved in a conventional employer-employee relationship. He applied to the school district for employment, entered into an employment contract and was placed on a substitute teacher list for the academic term. Thereafter, when the school district needed a substitute teacher it called one of the listed substitutes. If the substitute was available and accepts the invitation to teach, the substitute was given a teaching assignment for a particular period of time. One court described the relationship as follows:

> Substitute teaching is by its nature inherently indefinite depending as it does on the occurrence of unforeseen vacancies in the teaching faculty; however, the employment possibilities of a substitute teacher remains reasonably assured so long as the claimant intends to do the work and the district expects to offer the work as it becomes available.

*Guth v. Unemployment Compensation Board of Review,* 81 Pa.Cmwlth. 79, 473 A.2d 228, 231 (1984).

■ The legislature and the agency have treated school district employees differently than other employees. Unemployment benefits are not paid to teachers during the period between successive academic years or terms. Iowa Code § 96.4(5)(b). There is a special provision for substitute teachers in the agency rules which define whether a claimant is available for work and eligible for benefits. The rule is set out in pertinent part as follows:

> Substitute teachers. The question of eligibility of a substitute teacher is subjective in nature and must be determined on an individual case basis. *The substitute teacher is considered an instructional employee and is subject to the same limitations as other instructional employees. As far as payments of benefits between contracts or terms and during customary and established periods of holiday recesses, benefits will be denied if they have a contract or reasonable assurance that such individual will perform such service in the period immediately following such vacation or holiday recess.*

370 IAC 4.22(1)(r)(2) (1983) (emphasis added). Under this rule substitute teachers are treated the same as other instructional employees. A subjective test is applied to determine whether instructional employees have either a contract for the following term or a reasonable assurance of a continuation of their same status. The issue of whether the claimant had a reasonable expectation of employment with the other two districts, or the three districts treated collectively, was not raised before the agency in this case.

■ Decisions from other jurisdictions support the proposition that the employment relationship remains intact and prevents a substitute teacher from receiving unemployment benefits if the district offers the substitute employment at the same status as the following school year. *See, e.g., Indianapolis Public Schools v. Review Board,* 473 N.E.2d 155, 157–58 (Ind. App.1985) (substitute teacher who had no-

tice of and sent application for substitute teaching positions available in following year had reasonable assurance of employment and not entitled to summer unemployment benefits); *Claim of Scully*, 88 A.D.2d 689, 451 N.Y.S.2d 251, 252–53 (1982) (full-time teacher whose position was eliminated was determined to be ineligible for unemployment benefits because she was advised by the school district that substitute teaching positions were available for the upcoming school year and the teacher failed to complete an application because of travel time to work); *Phillippi v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 96, 458 A.2d 1072, 1074 (1983) (substitute teacher who received notice that she would remain on substitute teacher list for following year was disqualified from benefits during summer break because she had reasonable assurance of employment for the following year).

A substitute teacher who has been notified that his status will remain the same as the preceding semester or school year, and has no valid reason to believe otherwise, maintains a continued employment relationship with the school. *Ykovchick v. Public Schools of Minneapolis*, 312 Minn. 139, 251 N.W.2d 626, 628–29 (1977). In *Ykovchick*, the claimant was a substitute teacher in three school districts, similar to the claimant in the present case, and received a letter inquiring whether he wished to be placed on a substitute teacher call list the following year. The substitute teacher sought unemployment benefits during the summer claiming that because he was designated to be on "on call" status with the school district neither he nor the district could determine when his services would be required. The Minnesota court stated that claimant's "employment remained unchanged during the specific school years in question" and held he was precluded from receiving benefits during the summer months because he was not separated from his employment between school years. *Id.*

We conclude that neither of the rules cited by the agency applies to the

substitute teacher in this case. Rule 4.26(19) applies only to those temporary employees who fulfill their contract of hire when each job is completed. Despite the indefiniteness of teaching assignments under a substitute teacher agreement, the agreement does span the entire school year. Consequently, the contract of hire is not fulfilled when each assignment is completed. Also, the employment relationship remains intact if the substitute teacher is offered the same job for the following year. Neither do we believe that rule 4.26(22) applies to the contract of employment of the substitute teacher here. Rule 4.26(22) refers to employment for a specific period of time and working "until this period of time has lapsed." Although substitute teachers are available for an entire school year their work possibilities are indefinite during that time. By the very nature of the position, a substitute teacher may be called back time after time during the school year. Additionally, a substitute teacher has a continued employment relationship with the school district if he is offered similar employment for the following term. Therefore, we conclude that the agency erred when it relied upon rules 4.26(19) and 4.26(22) to determine that claimant was eligible for unemployment benefits.

In exercising the power of judicial review conferred by Iowa Code section 17A.19(8), the district court acts in an appellate capacity to review the agency action and correct errors of law. *Northwestern Bell Telephone Company v. Iowa State Commerce Commission*, 359 N.W.2d 491, 495 (Iowa 1985). In our review of such action by the district court we apply the same standards of section 17A.19(8) to the agency action in order to determine whether our conclusions coincide with those of the district court. *Id.*

If the district court does not affirm the agency action, it should remand to the agency for further proceedings. Iowa Code § 17A.19(8). If the agency ruling does not disclose a sound factual and legal basis for its decision, the court should re-

mand for findings of facts. *Taylor,* 362 N.W.2d at 557. In order to correct errors of law which are dispositive of the case the court may remand the matter to the agency for final appropriate disposition. *See, e.g., Maschino v. George A. Hormel & Company,* 372 N.W.2d 256, 260–61 (Iowa 1985).

We conclude that the district court should have reversed the agency's ruling in this case. We find the disposition of this case on remand to the agency may be effected without further evidence or findings of fact. We hold that the record shows that claimant voluntarily terminated his employment without good cause attributable to the employer.

 In the present case the claimant admitted that the school district sent him a letter "requesting notice of his availability." A teacher who declines to accept a new contract or reasonable assurance of continued status is considered to have voluntarily quit his or her employment. An agency rule is informative on this point:

> The claimant will be considered to have left his or her employment voluntarily when such claimant gave the employer notice of an intention to resign and the employer accepted such resignation. *The rule shall also apply to the claimant who was employed by an educational institution who has declined or refused to accept a new contract or reasonable assurance of work for a successive academic term or year and the offer of work was within the purview of the individual's training and experience.*

370 IAC 4.25(37) (1983) (emphasis added). This rule is applicable to substitute, as well as full-time instructors. *See* 370 IAC 4.22(1)(r)(2) (1983). Additionally, the school district's substitute teaching offer was similar to the offer it extended to claimant the previous school year. Therefore, there is conclusive evidence that claimant's failure to accept the school district's offer of substitute teaching for the 1983–84 term constituted a voluntary quit of claimant's employment with the district. *See Soul v. Unemployment Compensation Board of Review,* 29 Pa.Cmwlth. 504, 371 A.2d 572, 573–74 (1977). The question then narrows to whether this disqualifies claimant from receiving unemployment benefits.

 Voluntarily quitting work without good cause attributable to the employer generally disqualifies a claimant from receiving unemployment benefits. Iowa Code § 96.5(1). An agency rule provides that a voluntary quit shall be presumed to be without good cause attributable to the employer when "the claimant [has] moved to a different locality." 370 IAC 4.25(2) (1983). The claimant has not overcome this presumption. No evidence exists in the record to indicate that claimant qualifies for any of the voluntary quit exceptions of Iowa Code section 96.5(1)(a)–(1) or 370 IAC 4.26(1)–(27) (1983).

Furthermore, claimant's move, even though brought about by financial problems, was not attributable to the employer or his employment. *See, e.g., Soul,* 371 A.2d at 573–74 (substitute professor who declined an extension of his teaching assignment that was to terminate at the end of the semester was ruled a voluntary quit as a matter of law and no error was committed by agency in not considering his transportation problems); *Red Bird v. Meierhenry,* 314 N.W.2d 95, 96–97 (S.D. 1982) (claimant's husband's ill health caused family to lose their living quarters and necessitated a move to another city was not grounds to avoid claimant's voluntary quit). Although claimant's move in this case may not have been entirely his choice, such move was not attributable to the school district.

In his testimony before the agency, claimant conceded that he moved because of the financial problems created when he was unable to rent out his house in Cedar Rapids. Claimant began moving in May and completed his move to Cedar Rapids on June 1, 1983. Because it was a two-hour drive to Des Moines, claimant applied for substitute teacher employment in the Cedar Rapids area. Claimant noted on a form he prepared for the fact-finding review that, "I did not return it [the school district

form] because I was no longer living there and therefore not available to them." We conclude as a matter of law that claimant's decision to reject the substitute teacher employment offer submitted by the Des Moines School District constituted a voluntary quit without good cause attributable to the school district.

The district court was in error for failing to reverse the agency decision. Accordingly, we reverse and remand to the agency with directions to deny benefits to the claimant.

REVERSED AND REMANDED.