**Deloma M. NORLAND, Appellant.**

v.

**IOWA DEPARTMENT OF JOB SERVICE, and First Interstate Bank of Mason City, Appellees.**

No. 86–1520.

Supreme Court of Iowa.

Sept. 23, 1987.

Rehearing Denied Oct. 22, 1987.

Phillip N. Norland, Northwood, for appellant.

Blair H. Dewey and William C. Whitten, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and LAVORATO, JJ.

LAVORATO, Justice.

We consider in this judicial review proceeding whether the district court erred in sustaining the Iowa Department of Job Service's [1] denial of unemployment benefits to Deloma M. Norland. Norland had refused an offer of temporary work from her previous employer after losing her job during a lengthy leave of absence. When the final department decision refusing benefits was rendered and rehearing was denied, Norland filed a petition for judicial review. The district court sustained a special appearance based on Norland's failure to name the employer as a party. The court

of appeals, however, reversed, *Norland v. Iowa Dep't of Job Serv.*, 387 N.W.2d 365 (Iowa App.1986), and the district court then upheld the department's decision to deny benefits. In a separate action which alleged wrongful discharge, we have already affirmed a summary judgment for Norland's employer. *Norland v. First Interstate of Iowa, Inc.*, 398 N.W.2d 181 (Iowa 1986) (table).

Norland now argues the district court erred in sustaining the department's decision to deny benefits. She claims the department acted improperly in its failure to conform its findings to statutory requirements of format and substantive content, that it did not make the necessary burden of proof determination, and that its decision was unsupported by substantial evidence, and was unreasonable, arbitrary, and capricious in nature. Because we think the district court acted properly in rejecting these challenges and upholding the department's decision, we now affirm.

The department's findings of fact in Norland's case reveal that since December 1981 Norland had been employed as an operations secretary at the United Central Bank & Trust Company (now the First Interstate Bank) of Mason City. The bank placed her on disability leave on July 25, 1983, because of a serious medical problem. On September 12, her physician released her to return to her job, and she worked half days until returning to full-time hours one week later. After only two days of full-time work, however, the bank asked Norland to take a thirty-day leave of absence because it felt she had not recovered sufficiently from her medical problems.

When Norland called the bank on October 21 to reclaim her position at the end of her leave, she was told the job had been filled during her absence and no other work was available. Three days later a bank personnel officer offered Norland a temporary position that was similar to and at the same wage as her original job. This

---

1. The "department," as we call it in this opinion, is now known as the Division of Job Service. *See* 1986 Iowa Acts ch. 1245, § 933; 345 Iowa Admin.Code 1.1(1) (1987). On September 24, 1986, Job Service rules were moved from tab number 370 of the Iowa Administrative Code to tab number 345; we will refer to the latter here.

opening was expected to last six weeks, while a regular employee was on maternity leave. The department hearing officer found that Norland "refused [the job offer] only because ... the offered position was of a temporary nature, and because it might interfere with [her] ability to accept other work."

When Norland applied for unemployment compensation, the department held that she was disqualified for benefits because she had refused to accept "suitable work." The hearing officer, whose findings affirmed those of a claims deputy and were later adopted by the department appeal board, quoted Iowa Code section 96.5(3)[2] in full and then reviewed the department's factors for determining the suitability of work, see 345 Iowa Admin.Code 4.24(15),[3] as they applied to Norland's case:

No apparent risk to the health, safety, or morals of the claimant appears, the claimant has been released for work by her physician, the claimant's prior training fit her for the offered position, the claimant had been unemployed since July, but only because of her medical

problems, the work was similar to the work previously performed by the claimant and for the same employer, and the work was offered at the same wage as that previously offered the claimant.

The hearing officer concluded the temporary nature of the work offered to Norland did not make it "unsuitable" within the meaning of Iowa Code section 96.5(3)(a). Because failure, without good cause, to accept "suitable work" is a ground under which one may be disqualified for unemployment benefits, see Iowa Code § 96.5(3), Norland was found to be ineligible for such benefits.

After the hearing officer's ruling was incorporated by reference into the department's appeal board decision, Norland applied for and was denied a rehearing. She then filed a petition for judicial review, which was challenged in the special appearance noted above, and the district court ultimately upheld the department's final decision to deny benefits.

Norland's appeal in this court raises three issues: first, whether the format and content of the department's ruling con-

---

**2.** Iowa Code section 96.5 (1983) provides in pertinent part:

An individual shall be disqualified for benefits:

....

3. ... If the department of job service finds that an individual has failed, without good cause, ... to accept suitable work when offered that individual....

a. In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness, prior training, length of unemployment, and prospects for securing local work in the individual's customary occupation, the distance of the available work from the individual's residence, and any other factor which the department finds bears a reasonable relation to the purposes of this paragraph. Work is suitable if the work meets all the other criteria of this paragraph and if the gross weekly wages for the work equal or exceed the following percentages of the individual's average weekly wage for insured work paid to the individual during that quarter of the individual's base period in which the individual's wages were highest....

**3.** 345 Iowa Administrative Code 4.24(15)(a) provides:

a. *Regular benefits.* In determining what constitutes suitable work, the [department] shall consider, among other relevant factors, the following:

1. Any risk to the health, safety and morals of the individual.
2. The individual's physical fitness.
3. Prior training.
4. Length of unemployment.
5. Prospects for securing local work by the individual.
6. The individual's customary occupation.
7. Distance from the available work.
8. Whether the work offered is for wages equal to or above the federal minimum wage.
9. Whether the work offered meets the percentage criteria established for suitable work depending on the number of weeks of unemployment.
10. Whether the position offered is due directly to a strike, lockout, or other labor dispute.
11. Whether the wages, hours or other conditions of employment are less favorable for similar work in the locality.
12. Whether the individual would be required to join or resign from a labor organization.

formed to statutory requirements that call for the inclusion of authorities and reasons behind the findings and for specific discussion of the statutory factors for determining the suitability of work and good cause for refusal of the offered work; second, whether the burden of proof regarding suitability was properly assigned and satisfied; and third, whether the findings of suitability and lack of good cause were sound, in that they were not unreasonable, arbitrary, or capricious, and were supported by substantial evidence in the record.

I. *Scope of Review.*

■ Except when there is a specific statutory provision to the contrary, judicial review of agency action is governed by the Iowa Administrative Procedure Act (IAPA), chapter 17A of the Iowa Code. *City of Davenport v. PERB*, 264 N.W.2d 307, 311 (Iowa 1978); Iowa Code § 17A.19. Because there is no such specific statutory provision applicable in this case, *see* Iowa Code § 96.6(3), our review will be governed by the IAPA.

■ When, under the IAPA, this court reviews a district court decision on the validity of an agency action, we ask only whether the district court has correctly applied the law. *Jackson County Pub. Hosp. v. PERB*, 280 N.W.2d 426, 429 (Iowa 1979). The district court is itself acting "in an appellate capacity to correct errors of law on the part of the agency. In our review of such action by the district court, we merely apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court." *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 161–62 (Iowa 1987) (citations omitted); *accord Jackson County Pub. Hosp.*, 280 N.W.2d at 429–30; *Ray v. Iowa Dep't of Job Serv.*, 398 N.W.2d 191, 193–94 (Iowa App.1986). When the conclusions are the same, we must affirm. *Jackson County Pub. Hosp.*, 280 N.W.2d at 430.

■ Because "law issues are determinable by the judiciary alone," *Iowa Mallea-*

ble Iron Co. v. Iowa Employment Sec. Comm'n*, 195 N.W.2d 714, 717 (Iowa 1972) (citation omitted), we owe an agency only limited deference on matters of law, including statutory interpretation. *Des Moines Indep. Community School Dist. v. Department of Job Serv.*, 376 N.W.2d 605, 609 (Iowa 1985); *see also Brumley v. Iowa Dep't of Job Serv.*, 292 N.W.2d 126, 128 (Iowa 1980); Iowa R.App.P. 4. But "[w]e are not free to interfere with [an agency's] findings where there is conflict in the evidence or when reasonable minds might disagree about the inferences to be drawn from the evidence whether disputed or not." *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 239 (Iowa 1981) (citation omitted). We must ask "not whether the evidence might support a different finding but whether the evidence supports the findings ... actually made. Hence the findings of [an agency] are binding on appeal unless a contrary result is demanded as a matter of law." *Id.* at 237–38 (citing *Wetzel v. Wilson*, 276 N.W.2d 410, 412 (Iowa 1979)).

■ This limited scope of factual review is warranted by the presumably greater expertise an agency has over matters within its purview. So unless the agency is clearly shown to have acted unconstitutionally, in violation of a statutory mandate, or without substantial support in the record, *Churchill Truck Lines, Inc. v. Transportation Regulation Bd.*, 274 N.W.2d 295, 299 (Iowa 1979); *Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d 583, 591–92 (Iowa 1971), we should "broadly and liberally apply those findings in order to uphold rather than defeat the [agency's] decision," *Ward*, 304 N.W.2d at 237 (citing *Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 298 (Iowa 1974)).

II. *The Format and Content of the Department's Ruling.*

Norland argues the department's final decision[4] as written does not comply with

---

4. Because the hearing officer's decision was incorporated by reference into the decision of the Job Service appeal board, the content of the

"final decision" to which we refer is actually that of the hearing officer's decision.

the statutory requirements of format and content, although the district court found it "sufficient." First, she claims the final decision does not, for some of the contested issues regarding suitability of the offered work, contain "a concise and explicit statement of underlying facts supporting the findings." Iowa Code § 17A.16(1). There is, in her view, an absence of "cited authority or ... reasoned opinion." *Id.* Second, Norland argues the department's decision fails to address whether she had good cause to refuse the offered work. *See id.* at § 96.5(3).

■ We must disagree with Norland's contentions. While we "have previously pointed out the crucial importance" of the requirement of section 17A.16(1) that there be "cited authority or ... reasoned opinion" to back up an agency's decision, *Ward,* 304 N.W.2d at 238, the department has satisfied its duty in this case. If "it is possible to work backward [from the agency's written decision] and to deduce what must have been [the agency's] legal conclusions and [its] findings of fact," an assignment of error must be rejected. *Id.* at 239.

Very little deduction is necessary in this case. The department's decision clearly separates its findings of fact from its conclusions of law. Within the latter, the two appropriate authorities, Iowa Code section 96.5(3) and 345 Iowa Administrative Code 4.24(15), are cited. A comparison of these authorities' decisional factors, which are quite similar, with the department's application of them (quoted above) indicates that the relevant factors, including length of unemployment ("the claimant had been unemployed since July") and wage criteria ("the work was offered at the same wage as that previously offered the claimant"), were actually considered by the department. It is a simple matter—indeed, almost unnecessary—to reason backward from the department's application of these factors and its statement that "the temporary nature of the work offered ... does not make [it] 'unsuitable,'" to reach the conclusion that the work refused by Norland was "suitable" under the statute.

It is true the department does not mention "good cause," Iowa Code § 96.5(3), explicitly in its decision. We may begin, however, with its statement that Norland "refused to work only because of the fact ... the offered position was of a temporary nature, and because it might interfere with the claimant's ability to accept other work," and reason backward from there.

Two things explicit in the department's decision are relevant here: Norland's explanation for her refusal of the offered work, and the department's conclusion that the work was "suitable" and that refusal of it disqualified Norland for benefits. The combination of these two elements makes it logical to assume Norland's explanation did not constitute "good cause" for refusing the position. While we should not have to undertake such a deductive process when reviewing an agency decision made under clear statutory instructions, *see Ward,* 304 N.W.2d at 239, we do so here, and deduce the department implicitly found that there was no good cause to refuse the offered work in this case. We emphasize again, however, that we have undertaken this deductive process *"[w]ithout any willingness to continue the practice." Id.* (emphasis added). It should be unnecessary to say that, until statutory requirements are abolished, it is plainly in the public interest that agencies follow them. *Id.*

Whether the conclusions of the department were reasonable and supported by the record are matters we will discuss below. We conclude now, however, the district court was correct in finding that the department had addressed the appropriate statutory and administrative factors in its decision and that the application of those factors led logically to the department's conclusion.

III.  *Burden of Proof Regarding Suitability of Work.*

Next, Norland argues the department did not make the proper burden of proof deter-

mination. She urges that after a claimant has shown eligibility for benefits by proving her unemployed status, the department and the employer should bear the burden of proof on whether the work offered was suitable.[5] Specifically, she contends part of the employer's and department's burden should have been to offer evidence on every suitability factor in the statute and to show two things: how fringe benefits, or the lack thereof, would affect the statutory wage criteria, and whether the employee would be allowed to seek permanent work during business hours. We can see that part of this theory has support in the Code and the cases, but it does not compel a finding of legal error here.

■■■ Generally, the burden of proof is on the party asserting the affirmative of an issue in an administrative proceeding. *Wonder Life Co. v. Liddy,* 207 N.W.2d 27, 31 (Iowa 1973); *Gipson v. Iowa Dep't of Job Serv.,* 315 N.W.2d 834, 836 (Iowa App. 1981); *see also* Iowa R.App.P. 14(f)(5) ("Ordinarily the burden of proof on an issue is upon the party who would suffer loss if the issue were not established."). While in an unemployment compensation case the burden is on the claimant to show entitlement to compensation, *Des Moines Indep. Community School Dist. v. Department of Job Serv.,* 376 N.W.2d 605, 608 (Iowa 1985); *Walles v. Iowa Employment Sec. Comm'n,* 219 N.W.2d 539, 540 (Iowa 1974); *Moulton v. Iowa Employment Sec. Comm'n,* 239 Iowa 1161, 1172, 34 N.W.2d 211, 217 (1948), the burden shifts when the opposing party argues the claimant should be disqualified for benefits. *See Des Moines Indep. Community School Dist.,* 376 N.W.2d at 608 (citing *Taylor v. Iowa Dep't of Job Serv.,* 362 N.W.2d 534, 541 (Iowa 1985)) (once claimant shows entitlement to compensation, employer has burden of proving claimant quit job without cause attributable to employer); *Harlan v. Iowa Dep't of Job Serv.,* 350 N.W.2d 192, 194 (Iowa 1984) (employer has burden of proving misconduct in order to justify deni-

al of benefits); *Cosper v. Iowa Dep't of Job Serv.,* 321 N.W.2d 6, 11 (Iowa 1982); *Ray v. Iowa Dep't of Job Serv.,* 398 N.W.2d 191, 194 (Iowa App.1986); *Gipson,* 315 N.W.2d at 836 ("In the instant case, ... the affirmative issue is not whether the claimant presently is eligible for benefits, but is whether the claimant is disqualified.... Since it is the agency which proffers this assertion, we believe the agency bears the initial burden."); Iowa Code § 96.6(2) (once claimant proves satisfaction of eligibility requirements of Iowa Code section 96.4 employer must show that claimant is disqualified for benefits under section 96.5); Note, *The Iowa Employment Security Act (Unemployment Compensation),* 11 Drake L.Rev. 125, 135 & n. 68 (1962) ("[T]he commission has ruled that an employer who charges that the claimant is guilty of misconduct has the burden of proof to establish that fact, and this would probably also be the rule if an employer charges that the claimant has refused suitable work, since the claimant must establish his initial right to benefits before he is in a position to suffer a disqualification under these two provisions."). Because affirmative proof of suitability is part of the disqualification issue, Norland is correct in arguing she does not have the burden of proving the work she refused was unsuitable.

■■■ This is not to say, however, the employer did not meet its burden of proof. First, we do not agree the employer should have been required, as part of its burden, to offer evidence on every one of the statutory suitability factors, or that it was necessary to show that Norland would have been allowed to seek permanent work during the business hours of her temporary position. Nothing in the record indicates Norland would have been prevented from seeking permanent employment while she was temporarily working at the bank, so no issue existed on which the employer should have presented evidence. Similarly, not all

5. Norland made the same argument in the district court, but added, in the alternative, that if she, rather than the department and the employer, had the burden on suitability, she should be

allowed to present additional evidence. The district court, bypassing the burden of proof question, ruled no additional evidence would be allowed.

of the statutory suitability factors were at issue. If Norland thought other issues were present in the case, she should have raised them. Because Norland did not offer evidence into the record sufficient to raise these issues, she risked losing any potential relief based on them. *See McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908 (Iowa 1976); *McCormick on Evidence* § 338, at 792 (2d ed. 1972) (If the proponent of an issue "had remained silent at the outset he would irrevocably have lost the case on this issue."); Annotation, *Unemployment Compensation: Eligibility as Affected by Claimant's Refusal to Accept Employment at Compensation Less Than That of Previous Job*, 94 A.L.R.3d 63, 71 & n. 27 (1979) (Failure of the claimant to present evidence on the wage issue "may cost the claimant his case on judicial review.").

Next, Norland is incorrect in arguing the employer had the burden of proof on the issue whether fringe benefits would have affected the statutory wage criteria. The employer did offer evidence that the salary for the temporary position would have been the same as for Norland's original job. For Norland to suggest the employer had any burden to offer more is to confuse the two subcategories of the burden of proof: the burdens of persuasion and of producing evidence. The burden of ultimately persuading the trier of fact does not shift. *McDowell*, 241 N.W.2d at 908; *McCormick on Evidence* § 336, at 784. As we have said above, the employer had the ultimate burden on disqualification issues, which include any issue of wage adequacy. But the burden of producing evidence on the wage issue shifted to Norland once the employer had made out a prima facie case of adequate wages. By not offering evidence on fringe benefits as a rebuttal to the employer's prima facie case, Norland risked losing on this issue. *See McDowell*, 241 N.W.2d at 908 ("If the proponent of a proposition generates a fact issue and his adversary adduces no proof, the adversary simply takes the risk of having the fact finder find that the proponent of the proposition sustained his burden of persuasion."); *Wilson v. Findley*, 223 Iowa 1281, 1300, 275 N.W. 47, 57 (1937); *Gibbs v. Farmers' and Merchants' State Bank*, 123 Iowa 736, 742, 99 N.W. 703, 706 (1904); *McCormick on Evidence* § 338, at 791–92. Further, it would have been difficult for Norland to show that the lack of fringe benefits affected the adequacy of the wages offered, since the statutory definition of "wages" specifically excludes fringe benefits. *See* Iowa Code § 96.19(12)(a)–(d).

Finally, there is the matter of judicial deference to administrative fact finding. The hearing officer apparently thought the employer's burden was met. As with other issues of fact, we must show deference to the administrative fact finder, unless, as a matter of law, that fact finder was wrong. *See Pohlman v. Ertl Co.*, 374 N.W.2d 253, 255 (Iowa 1985) (reviewing court may not interfere with findings of administrative fact finder regarding burden of proof unless finding was wrong as a matter of law).

In Norland's case, there was no explicit assignment of the burden of proof to the wrong party, which we would be able to correct as a matter of law, nor was there any explicit finding as to who had the burden on a particular issue. Rather, the department simply found that the work refused was "suitable" and therefore Norland had to be disqualified from receiving benefits. Judging from the record, the department could reasonably have found that the employer carried its burden of proving Norland to be disqualified for benefits. We see no reason, as a matter of law, to disturb the findings of the department on this issue.

IV. *The Soundness of and Support for the Findings of Suitability and Lack of Good Cause.*

■ Finally, Norland alleges two further deficiencies in the department's decision: first, that it was unreasonable, arbitrary, and capricious in its determination the offered work was suitable; and, second, that it was unsupported by substantial evidence of suitability or, if the job was suitable, of lack of good cause to have refused it. *See* Iowa Code § 17A.19(8)(f), (g). We disagree.

A. *Whether the Suitability Finding was Unreasonable, Arbitrary, and Capricious.* "The term 'arbitrary' when applied to test the propriety of agency action means the action complained of was without regard to the law or consideration of the facts of the case." *Burgess v. Great Plains Bag Corp.*, 409 N.W.2d 676, 678 (Iowa 1987). In this context, "arbitrary" and "capricious" are "practically synonymous." *Churchill Truck Lines, Inc. v. Transportation Regulation Bd.*, 274 N.W.2d 295, 299 (Iowa 1979).

■ The decision here is clearly not arbitrary and capricious. The department applied the appropriate statutory and administrative factors for determining the suitability of work with a fair amount of particularity to the facts of this case. Its written decision referred specifically, in the context of the legal factors, to such facts as Norland's health, how long she had been unemployed, the type of work offered, and the potential wages. There can be no question that this decision is not arbitrary or capricious.

"Unreasonable," as a statutory term, "has been said to mean action in the face of evidence as to which there is no room for difference of opinion among reasonable minds or not based on substantial evidence." *Churchill Truck Lines*, 274 N.W.2d at 300 (citations omitted). The question of substantial evidence will be discussed below. In the other sense, the decision here is not "unreasonable" because there is, in this situation, room for a difference of opinion among reasonable minds whether temporary work is "suitable." In fact, the cases show that reasonable minds *have* differed on this subject under varying circumstances. *Compare Brumley v. Iowa Dep't of Job Serv.*, 292 N.W.2d 126, 127 (Iowa 1980) (claimant disqualified for benefits for not actively seeking suitable work because "substitute teaching applications would be temporary and not suitable work contacts") *and Toston v. Industrial Comm'n*, 160 Colo. 281, 284, 417 P.2d 1, 2 (1966) ("A refusal to accept an offer of temporary employment does not, in and of itself, end the period of unemployment.") *and Johnson v. District Unemployment*

*Compensation Bd.*, 408 A.2d 79, 82 (D.C. 1979) (claimant seeking permanent position found ineligible for benefits because he refused suitable temporary position after four months of unemployment) *and Kuether v. Personnel Pool*, 394 N.W.2d 259, 261 (Minn.App.1986) (claimant seeking permanent position found ineligible for benefits because proffered temporary work was unsuitable) *and Winterle v. Unemployment Compensation Bd. of Review*, 65 Pa. Commw. 486, 488, 442 A.2d 1211, 1212 (1982) (claimant seeking permanent position found ineligible for benefits because she refused suitable continuing temporary work without good cause).

■ That some of these cases involved situations in which temporary work was not considered "suitable" does not mean we should be persuaded, as a matter of law, temporary work is unsuitable. "This court has repeatedly held, with regard to Chapter 96, ... [that] though remedial in character the Act must be construed in light of those facts peculiar to each given case." *Iowa Malleable Iron Co. v. Iowa Employment Sec. Comm'n*, 195 N.W.2d 714, 716 (Iowa 1972) (citations omitted). This preference for treating each case as a separate entity unconnected to any other case is emphasized by 345 Iowa Administrative Code 4.24(3), which provides that "[e]ach case shall be determined on its own merits as established by the facts." This rule, when read together with Iowa Code section 96.5(3), the provision on disqualification for failure to accept work, "makes it clear that suitability is a *fact* issue." *Pohlman*, 374 N.W.2d at 256 (emphasis added).

Further, even if the department did have the duty to follow the "common law" from other states, as Norland implicitly argues, the *Toston* case would not be as "persuasive" as Norland suggests it is. She contends the situation in *Toston* is analogous to her own because the claimant there had also refused temporary work for fear of missing a more permanent opportunity. Norland urges us to hold, as the *Toston* court did, that she should also have a reasonable amount of time to secure permanent work.

■ We note, however, the *Toston* court made its decision under a statutory

scheme significantly different from ours. While the Colorado statute applied in *Toston* had very similar suitability factors to those in the Iowa statute, *see* 160 Colo. at 284, 417 P.2d at 2, it did not contain any criteria requiring that the wages of an offered job be at particular percentages of the former wages at certain times after unemployment begins, *see Bayly Mfg. Co. v. Department of Employment*, 155 Colo. 433, 440–41, 395 P.2d 216, 219–20 (1964) (Colorado statute does not require particular wages at offered job as long as wages not substantially less favorable than original wages). *Compare* Iowa Code § 96.-5(3)(a)(1)–(4) (offered wages must be at particular percentages of former wages at certain times after unemployment begins for work to be suitable). This difference emphasizes that under the Iowa statute, wages are the only factor which must be satisfied in a definite way for work to be suitable. The other suitability factors, including "length of unemployment," need only be balanced by the department when making its decision. Clearly, the factual determination in Norland's case was made in the proper way.

█ We have stated above that when findings of fact are at issue, we will defer to the agency action unless the agency has been shown to have acted unconstitutionally, in violation of a statutory mandate, or without substantial support in the record. *Churchill Truck Lines*, 274 N.W.2d at 299. No constitutional violation has been alleged here, and we have already addressed most of the possible statutory defects in the department's decision. Unless our remaining analysis on the issues of unreasonableness and substantial evidence reveals some legal problem in the department's decision, we must defer to its expertise. *Id.*

B. *Substantiality of the Evidence.* As already noted, one meaning of "unreasonable" is that the challenged action is not based on substantial evidence. *Id.* at 300. Hence, we may address this definition of "unreasonable" and the question of substantial evidence as one issue.

█ Fact findings of an agency are binding on the courts when they are supported by substantial evidence. *New Homestead v. Iowa Dep't of Job Serv.*, 322 N.W.2d 269, 270 (Iowa 1982); *Iowa Malleable*, 195 N.W.2d at 717. "Evidence is not insubstantial merely because it would have supported contrary inferences. It is substantial when a reasonable mind could accept it as adequate to reach the same findings." *New Homestead*, 322 N.W.2d at 270 (citation omitted); *accord Ray v. Iowa Dep't of Job Serv.*, 398 N.W.2d 191, 193 (Iowa App.1986); *Cerro Gordo County v. PERB*, 395 N.W.2d 672, 675 (Iowa App. 1986).

█ 1. *Suitability of the Offered Work.* Norland argues that because no testimony was presented on suitability factors other than wages and hours, the department's decision could not have been supported by substantial evidence. We must disagree, first, because as we said above, the only evidence that must be introduced is that which is relevant to issues that have been raised. The evidence in the record is sufficient in this respect.

Next, we find that the evidence introduced on the issues that *were* raised was indeed substantial. It is conceivable temporary work can be unsuitable. But given the facts in this case—that the offered position was for the same employer, at the same wages, and entailed very similar duties—the objective "reasonable mind" could very easily reach the conclusion that *this* temporary work was quite "suitable."

Moreover, the department clearly had the discretion to make such a finding. Although neither the Code nor the department's rules addresses temporary work specifically, both sources of authority direct the department to consider "other" factors relevant to determining the suitability of work. *See* Iowa Code § 96.5(3)(a) ("In determining whether or not any work is suitable ..., the department shall consider ... any other factor which the department finds bears a reasonable relation to the purposes of this paragraph."); 345 Iowa Admin.Code 4.24(15) ("In determining what constitutes suitable work, the [department] shall consider, among other relevant factors,....").

When an agency is given the discretion to choose such "other" factors, they must

be logically related to the particular facts at hand and their use must lend itself to consistency in the agency's reasoning from case to case. *Anthon-Oto Community School Dist. v. PERB*, 404 N.W.2d 140, 144 (Iowa 1987); *see also City of Davenport v. PERB*, 264 N.W.2d 307, 312 (Iowa 1978) (citing *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 303–04, 97 S.Ct. 576, 580–81, 50 L.Ed.2d 494, 500–01 (1977)) (" '[T]he appropriate weight ... must be given to the judgment of the agency whose special duty is to apply this broad statutory language to varying fact patterns....' "); B. Schwartz, *Administrative Law* § 216, at 606–07 (1976) ("[T]he traditional rule [is] that agencies vested with discretion possess only the authority to exercise such discretion reasonably."); 2 Am.Jur.2d *Administrative Law* § 191, at 23 (1962) ("The very essence of a discretionary power is that the [agency] may choose which of several permissive courses will be followed ... [and the agency may act] officially ... according to the dictates of [its] own judgment ... as to what is just and proper under the circumstances....").

In the present case the temporary nature of the offered work was one of the "other" factors which could logically and reasonably be considered. The department apparently did not think that, when balanced against the other suitability factors relevant here, the temporary nature of the offered work counseled against a finding of suitability. In keeping with the deference we owe to administrative findings of fact, we hold that there was substantial evidence to support the department's finding regarding the suitability of the work offered.

2. *Lack of Good Cause.* Norland also argues there was not substantial evidence to support a finding that she refused the offered work, if it was suitable, without good cause. While she is correct that suitable work may be refused with good cause, *see* Iowa Code § 96.5(3), we disagree the department's implicit decision on this issue was unsupported by substantial evidence. "Good cause for refusing work must involve circumstances which are real,

substantial, and reasonable, not arbitrary, immaterial, or capricious." *Mangan v. Bernardi*, 131 Ill.App.3d 1081, 1084, 87 Ill. Dec. 412, 415, 477 N.E.2d 13, 16 (1985). Norland contends her refusal of the offered work fits this definition because it was uncontradicted that she was, in good faith, seeking permanent work. This argument must be rejected, first, because it makes no sense to say there is good cause to refuse one type of suitable work—albeit temporary—in order to seek another type of suitable work. Norland's justification for refusing the offered job is simply not substantial.

A second ground exists on which we must reject this argument. The question of good cause, like that of suitability, is a fact issue within the discretion of the department to decide. *See* 345 Iowa Admin.Code 4.24(3) ("Based upon the facts found by the [department] ... it shall then be determined ... whether the claimant has good cause for refusal. Each case shall be determined on its own merits."). Under such a decisional scheme, it must be remembered that "the requirement of taking all evidence into account in reviewing administrative findings does not detract from the duty of courts to grant appropriate deference to agency expertise." *City of Davenport v. PERB*, 264 N.W.2d at 312 (citations omitted). Here, we find it appropriate to defer to the department's reasonable finding of fact that, based on substantial evidence, the work refused by Deloma Norland was "suitable" and that such a refusal, without good cause, disqualified her from receiving unemployment compensation. The department's final decision is well within the law as we have stated it: during the first five weeks of unemployment a claimant may not turn down a job if "it meets statutory criteria for suitability and pays as much as the individual's prior job." *New Homestead*, 322 N.W.2d at 271.

V. *Disposition.*

We reach the conclusion, as did the district court, that in finding Deloma M. Norland disqualified for unemployment compensation because of her refusal without

good cause to accept suitable work, the Department of Job Service acted properly. The department substantially complied with the statutory mandates applicable to the format and content of its decisions; it did not, as a matter of law, place the burden of proof on the wrong party; and its findings were neither unreasonable, arbitrary, and capricious, nor unsupported by substantial evidence. Because our conclusion is the same as that of the district court, we must affirm.

AFFIRMED.